IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LAWRENCE J. KONCELIK, JR., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 08-C-623 |
| | ) | |
| v. | ) | Judge:  Bucklo |
| | ) | Magistrate Judge:  Nolan |
| SUNBEAM PRODUCTS, INC. | ) | |
| d/b/a JARDEN CONSUMER | ) | |
| SOLUTIONS | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION
TO STAY PENDING REEXAMINATION OF PATENT-IN-SUIT**

**I.   INTRODUCTION**

Sunbeam Products, Inc. d/b/a Jordan Consumer Solutions ("Sunbeam") hereby respectfully moves this Court to stay these proceedings related to U.S. Patent No. 7,096,766 (the "'776 Patent") asserted by plaintiff Lawrence J. Koncelik, Jr. ("Plaintiff" or "Koncelik") pending the resolution of reexamination of the '776 Patent by the United States Patent and Trademark Office ("USPTO").

On May 16, 2008, Sunbeam requested that the USPTO reexamine the '776 Patent to resolve substantial new questions of the patentability of all claims of the '776 Patent in view of the prior art.  Sunbeam's request was made pursuant to the USPTO's *inter partes* reexamination rules, *see* 15 U.S.C. §§ 311-318 and 37 C.F.R. §§ 1.902-1.997, which allow Sunbeam to participate in the reexamination proceedings before the USPTO. On August 1, 2008, the USPTO granted Sunbeam's reexamination request and issued a First Office Action to the patentee, Lawrence J. Koncelik, Jr., plaintiff in these proceedings, canceling *all 16 claims* of the '776 Patent, adopting the salient aspects of Sunbeam's invalidity arguments in its reexamination

request, particularly those directed to the asserted claims in this matter – claims 1, 4, 5, 14 and 16.

This case is particularly suited to be stayed for the following reasons:

- A stay will not unduly prejudice or present a tactical disadvantage to Koncelik because this case is in its early stages and neither party has conducted substantial discovery. The *Markman* hearing is scheduled for December 2008, more than four (4) months away. At this early stage of the proceedings, a stay to allow the USPTO to reexamine the '776 Patent will not prejudice Koncelik.

- Plaintiff Koncelik does not compete with Sunbeam, so Koncelik will not suffer any competitive disadvantage from a stay. Koncelik is merely a patent holding individual. He produces nothing and appears to have prosecuted and obtained the '776 Patent solely for the purpose of suing other entities who actually develop and brought to market the technology allegedly claimed in the '776 Patent. Further, monetary damages will suffice should Koncelik ultimately prevail, and such damages will not be affected adversely if the Court grants the stay.

- A stay of these proceedings pending the reexamination will preserve judicial resources and the resources of both parties if the claims of the '776 Patent are modified or cancelled in the reexamination proceeding, which occurs in excess of 70% of all reexaminations. *ALZA v. Wyatt*, 2006 WL3500015, at *2 (E.D. Tex. 2006). According to a recent article addressing the issue, the percentages of claims found invalid or are otherwise amended through an *inter partes*

reexamination are even greater, with *full rejection* of all claims in at least 70 % of the cases.[1]

- A stay will undoubtedly simplify the issues in question and the trial of the case. Reexamination of the '776 Patent likely will result in the cancellation of some or all of the asserted claims, rendering moot any proceeding in this Court on the cancelled claims. Additionally, the outcome of the reexamination may encourage a settlement, minimizing use of the court's time and reduction of the court for the parties.

- In the event that any of the asserted claims survive reexamination without amendment, the additional prosecution history will inform the Court of the parties' respective understanding of the scope of the asserted claims and of the prior art.

- Koncelik cannot complain of a delay because he will suffer no real harm.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

On January 29, 2008, Koncelik filed a complaint against Sunbeam alleging infringement of the '776 Patent. (*See* Doc. 1) In his Complaint, Koncelik alleged that certain Sunbeam products, including MR. COFFEE®, Coffee Maker's Model Nos. ISTX85, FIX, ISS and ISX infringe certain claims of the '776 Patent. (*Id*., at ¶7) Koncelik's claim of infringement was based upon the assertion that certain Sunbeam MR. COFFEE® coffee maker's utilized a button in conjunction with two indicator lights to apprise the consumer of the "strength" of the coffee being brewed. The claimed infringing function of the subject coffee makers works to alters the

---

[1] *See* Hristo I. Vachovsky and Robert A. Saltzberg, *Reexamination Filings Continue Their Upward Trend*, ipFrontline.com, August 7, 2008, http://www.ipfrontline.com/depts/article.asp?id=20309&deptid=4.

brewing time[2] for that particular batch of coffee. If the user selects "strong," the eventual brew will have a richer, deeper and slightly more bitter taste than if the user had otherwise selected "regular."

In early February 2008, and before service of the Complaint, Sunbeam provided Plaintiff's counsel information about the operation of Sunbeam prior art coffee makers that practiced the alleged invention of the '776 Patent. (*See* Declaration of Michael R. Annis ("Annis Dec."), ¶ 2, Exhibit A) With this notice, Plaintiff knew that the feature of the Sunbeam coffee makers he claimed infringed the '776 Patent had been in practice by Sunbeam for several years before Plaintiff even filed his application that became the '776 Patent.

In addition, Sunbeam identified U.S. Patent No. 3,430,232 to Martin (the "Martin '232" reference), which taught a coffee maker that performed the alleged invention of the '776 Patent, and suggested that Plaintiff review the cited references carefully before proceeding with suit. (*Id.*)

On March 31, 2008, Sunbeam filed its Answer and Counterclaims to Plaintiff's Complaint, denying all salient allegations of the Complaint and counterclaimed to invalidate the asserted claims of the '776 Patent. (Doc.13)

On April 15, 2008, Sunbeam provided Plaintiff a list of prior art references, including the Martin '232 patent, and U.S. Patent Nos. 3,685,692 to Erne ("Erne '692"), and 3,428,218 to Coja ("Coja '218"), that showed the invention of the '776 Patent claimed by Koncelik had been known in the art well before his alleged date of invention. (Annis Dec., ¶3, Exhibit B) With this letter, Sunbeam provided Koncelik a claims chart showing how those prior art references

---

[2] The identified function alters the amount of time that the heated water interfaces with the ground coffee beans which, in turn, extracts a different amount of oils from the coffee beans thus altering the taste of the eventual beverage released into the receptacle. Although the indicator allows the user to choose either "regular" or "strong" brewing, the function does not provide the user with any more or less caffeine from the coffee beans.

invalidated the asserted claims of the '776 Patent. (*Id.*) None of these references had been considered by the USPTO during the prosecution of what became the '776 Patent. (*See* Complaint, Doc. 1, Exhibit A)  Further, Sunbeam provided additional information on the operation of its earlier coffee maker models that had used the same brew timing function but had identified the function to the user as a "1-4 cup" feature. (*Id.*)  As noted in Sunbeam's user manuals for those products, the "1-4 cup" feature allows the heated water to interface with the ground coffee for approximately 30% longer than if the user had not engaged the function.  The longer the time that heated water interfaces with ground coffee, the richer and more bitter the eventual coffee beverage becomes.  This "1-4 cup" feature was developed when it was recognized that brewing smaller batches of coffee tended to taste weaker than when a full pot of coffee was brewed.  In order to "strengthen" the taste of the smaller batches, Sunbeam's engineers developed the feature that would allow the heated water to interface with the ground beans longer so that the user would have the same tasting cup of coffee even when she brewed smaller batches. (*Id.*) As such, Sunbeam had provided Plaintiff with a host of prior art references that showed the '776 Patent was invalid within two weeks of filing its Answer and Counterclaims in this suit.

On or about May 16, 2008, Sunbeam filed a Request for Reexamination of the patent-in-suit with the USPTO.[3]  Sunbeam's petition was filed as an i*nter partes* reexamination pursuant to 35 U.S.C. § 311-318 and 37 C.F.R. 1.902–1.997, meaning that both Koncelik and Sunbeam will have equal opportunity to address the patentability of Koncelik's claimed invention.  In its Request for Reexamination, Sunbeam contends that each and every claim of the patent-in-suit are unpatentable as a result of prior art, most of which was not been considered by the USPTO in

---

[3] Sunbeam's initial filing was rejected by the USPTO for technical reasons.  Sunbeam refiled its reexamination request on June 26, 2008

its initial examination of the application that lead to the '776 Patent. Included were the Martin '232, Erne '692 and Coja '218 references, as well as the Sunbeam manuals provided to Plaintiff in February 2008.

Discovery in this case is in its preliminary stages. The Court entered its Case Management Order on May 13, 2008, thereby open discovery in the case. Shortly thereafter, Sunbeam served its initial written discovery requests upon Plaintiff. On June 23, 2008, Plaintiff provided its responses to Sunbeam's initial discovery requests. The parties submitted a joint proposed protective order to the Court on July 28, 2008, which was entered by the Court on July 30, 2008. No depositions have been noticed, scheduled or taken in this matter.

Claim construction efforts have just begun. Under the Court's original Scheduling Order, the parties exchanged their respective list of claim terms for construction on July 20, 2008.

On July 28, 2008, the parties agreed to seek an extension of other claim construction-related dates in the Court's Scheduling Order to allow the USPTO its allotted time to accept or reject Sunbeam's reexamination request for the '776 Patent. The Court granted that joint motion on July 30, 2008, extending all claim construction-related dates by 60 days.

On August 1, 2008, the USPTO granted Sunbeam's request for *inter partes* reexamination of the '776 Patent, assigning the matter USPTO reexamination control no. 95/001,044. (Annis Dec., ¶ 4, Exhibit C) On that same day, the USPTO preliminarily rejected all of the examined claims of the '776 Patent. (*Id.*, at ¶ 5, Exhibit D) The examiner's rejection adopted almost verbatim Sunbeam's positions that the asserted claims of the '776 Patent were invalid in light of Martin '232, Erne '692, Coja '218 and the Sunbeam prior art manuals previously provided to Plaintiff.(*Id*, at pp. 2-10, 11-12, 13-19, 27-29) Under the office action, Koncelik has 60 days to respond to the examiner's rejections. (*Id.*)

### III.   ARGUMENT AND AUTHORITIES

#### A.   Analytical Framework for Considering Stay Request

Congress enacted legislation establishing a reexamination procedure to provide an inexpensive, expedient means for determining patent validity.  Congress intended the courts should defer to the reexamination process, and early versions of the reexamination statute expressly provided for a stay of court proceedings during reexamination.  S. 1679, 96 Cong., 1 Sess. §310 (1979); H.R. 5075, 96 Cong. 1 Sess. §310 (1979); S. 2446, 96 Cong., 2nd Sess. §310 (1980).  Congress ultimately deemed such an express provision unnecessary because it expected the district courts would liberally grant stays.  H.R. Report No. 1307 Part I, 96 cong., 2nd Sess. reprinted in [1980] U.S. Code Cong. & Ad. News 6460, 6463 (emphasis added); *see also* ***Gould v. Laser Control Corp.***, 705 F.2d 1340 (Fed. Cir. 1983). Consistent with the Congress's intent, district courts have adopted a "liberal policy in favor of granting motions to stay proceedings pending the outcome of USPTO reexamination or reissuance proceedings." ***ASCII Corp. v. Std. Entm't USA****,* 844 F. Supp. 1378, 1381 (N.D. Cal. 1994).

There are two types of reexamination proceedings: ex parte and inter partes.  An inter partes reexamination, in contrast to an ex parte reexamination, provides a third party the right to participate in the reexamination process. *See* 35 U.S.C. § 314.  The results of the reexamination are thus binding upon the third party requester in any subsequent or concurrent civil action.  *Id*. at § 315(c); ***Tomco 2 Equip. Co. v. Southeastern Agri-Systems, inc.*** 542 F.Supp. 2d 1303, 1306 (N.D. Ga. 2008).

Congress created the ***inter partes*** review to provide an alternative method of resolving disputes, using the expertise of the USPTO. ***Tomco 2***, 542 F.Supp. 2d at 1306-07. *Inter partes*

review is intended to provide this review in an "efficient and relatively inexpensive manner." Court's addressing the benefits of an *inter partes* reexamination note that:

- All prior art presented to the Court will have been first considered by the USPTO with its particular expertise:

- Discovery problems relating to prior art can be eliminated by the USPTO reexamination;

- In cases resulting in effective invalidity of the patent, the suit will likely be dismissed;

- The outcome of the reexamination may encourage a settlement without the further use of the Court;

- The record of the reexamination would likely be entered at trial , thereby reducing the complexity and length of the litigation;

- Issues, defenses and evidence will be more easily limited in pretrial conferences after a reexamination; and

- The costs will likely be reduced both for the parties and the Court.

*Id.* at 1307 (*citing* **Datatreasury Corp. v. Wells Fargo & Co**., 490 F. Supp.2d 749, 754 (E.D. Tex. 2006)).

The decision to grant a stay pending the outcome of reexamination proceeding is left to the sound discretion of the district court, which has the "inherent power to control its own docket, including the power to stay proceedings." **Soverain Software LLC v. Amazon.com**, 356 F. Supp. 2d 660, 662 (E.D. Tex. 2005); *see also* **Ethicon Inc. v. Quigg**, 849 F.2d 1422, 1426 (Fed. Cir. 1988). The ultimate question is: whether the benefits provided by the stay outweigh the potential drawbacks? In deciding whether to exercise this discretion to grant a stay, courts

should balance the equities at stake.  *See* **Landis v. North America Co.**, 299 U.S. 248, 254 (1936).  In evaluating the equities, courts typically consider:

1. Whether discovery is completed and whether a trial date has been set;

2. Whether a stay will simplify the issues in question and trial of the case; and

3. Whether a stay will unduly prejudice or present a clear tactical clear advantage to the non-moving party.

*See* **Soverain**, 356 F. Supp. 2d at 662; **Tomco 2,** 542 F.Supp. 2d at 1307 ; **eSoft, Inc. v. Blue Coat Sys., Inc**., 505 F.Supp 2d 784, 787 (D. Colo. 2007); **Implant Innovations, Inc. v. Nobelpharma AB**, 93-C-7498, 1994 WL 68498, at *3 (N.D.Ill  February 25, 1994) (applying similar standard).   Although some of these factors may ultimately overlap, courts essentially determine whether the benefits of a stay outweigh the inherent costs based on these factors.  When weighed here, the factors all support staying the current litigation.

      **B.**    **Because this suit is in its initial stages, the Court should stay this matter pending reexamination of the '776 Patent by the USPTO**.

Initially, Courts consider how much discovery has taken place in a particular lawsuit and whether a trial date has been set when determining whether or not a stay is appropriate.  **Xerox Corp. v. Three Comm Corp.**, 69 F.Supp.2d 404 (W.D.N.Y. 1999).  Although a trial date has been set, trial is not currently scheduled to begin until more than a year from now -- sometime after August 22, 2009.  In addition, the parties are in the nascent stages of discovery, and the Court's hearing on claim construction is not scheduled until December 2008.

Sunbeam has sent its initial set of written discovery to Plaintiff, and Plaintiff has provided its initial responses to the same.  Plaintiff has not, however, forwarded any written discovery requests to Sunbeam.  No depositions have been noticed or taken.  As such, the preliminary stage of discovery in this case favors a stay.  *See* **Manometrics, Inc. v. Nova**

*Measuring Instruments, Ltd.*, 2007 WL 627920, at *2 (N.D. Cal. 2007) (granting a stay where "Discovery has commenced, but has not proceeded beyond this point. No briefing on claim construction has been filed. No dispositive motions have been submitted. And as currently scheduled, trial [is more than a year away]."); *ASCII*, 844 F.Supp. at 1381.

Although the Court has set trial for After August 2009, that date is just over a year from now. Significant work remains to be completed before trial. For instance, the parties would need to complete (1) claim construction proceedings, (2) brief and argue summary judgment issues, (3) prepare and exchange expert reports, and (4) complete discovery (which has only just begun). Further, before trial, the Court would need to expend time and resources to construe the '776 Patent and rule on the summary judgment and others motions that the parties may be expected to file. It is probable, based on the statistical evidence, that upon reexamination the USPTO will take some action that results in canceling or altering one or more of the claims at issue in these proceedings. Accordingly, a stay would likely narrow and clarify the issues for trial.

    **C.    A stay will reduce and simplify the issues for trial by taking advantage of the USPTO's expertise examining patents.**

The second factor courts consider when determining whether to grant a stay is whether the issues will be simplified for trial if the stay is granted. *Tomco 2*, 542 F. Supp. 2d at 1308. Courts have noted in patent cases involving reexamination of the patent-in-suit that, absent a stay, the parties may end up conducting a significantly wider scope of discovery than necessary, and that courts will likely waste time examining the validity of claims which are modified or eliminated altogether during reexamination. *Guthy-Renker v. Icon Healthy & Fitness, Inc.*, 1998 WL 670240, 3* (C.D. Cal. July 15, 1998). That is particularly true here where the USPTO has now rejected all of the claims of the '776 Patent as being unpatentable. (Annis Dec., Exhibit D) Moreover, because Courts will need to interpret the pertinent claims of the patent at some

point during the case, waiting until after the reexamination will provide this Court with the expertise of the USPTO. *Id.* A stay of these proceedings is appropriate.

First, in an *inter partes* reexamination, in contrast to an *ex partes* reexamination, has great potential for simplifying issues. It has a *res judicata* effect, and it allows the Court to consider the expertise of the PTO before making its own conclusions. *See* **Tomco 2**, 542 F.Supp.2d at 1309. Because the *inter partes* review provides the third-party the right to participate in the reexamination process, the result of the reexamination are binding on the third-party requested. *See* 35 U.S.C. §§ 314(b)(2), 315(c). Therefore, the *inter partes* reexamination is very likely to simplify issues before this Court because Sunbeam cannot re-litigate any of the issues determined by the USPTO.

In addition, the wiser choice is to allow the USPTO to determine what effect, if any, the multiple prior art references cited in Sunbeam's Request for Reexamination have on this case. "[T]he technical expertise provided by the reexamination proceeding will be helpful to the Court on any issues that remain." **Data Treasury Corp.**, 490 F.Supp.2d at 574 (citing **Gould**, 705 F.2d at 1342). As noted, the USPTO has initially determined that most of the 12 references cited by Sunbeam invalidate the issued claims of the '776 Patent.

Because the '776 Patent claims are subject to nullification and/or change, a stay of these proceedings is warranted. In order to determine whether Sunbeam has an apparatus that infringes on the '776 Patent, the Court compares the claims of Plaintiff's patent with the Defendant's challenged apparatus. However, if the claims of Plaintiff's patent are subject to rejection or subject to change, it does not make sense for the Court to proceed. *See* **Data Treasury**, 490 F.Supp.2d at 755. If the Court makes a determination with regard to the original patent claim and the claim is changed, then the Court's analysis is for naught. Therefore, "the

possibility that some of the claims may change during reexamination . . . favors staying the case." *Soverain*, 356 F.Supp.2d at 662.

      **D.**    **A stay will preserve judicial resources**.

Many courts have recognized the efficiency of the reexamination procedure and stated infringement litigation pending reexamination. *See* ***GPAC Inc. v. DWW Enterprises, Inc***., 144 F.R.D. 60, 62 (D.N.J. 1992); ***Robert H. Harris Co. v. Metal Manufacturing Co***., 19 U.S.P.Q.2d 1786, 1788 (E.D. Ark. 1991) (entering a stay even though trial was eminent); ***Mound v. Shimano American Corp.***, 18 U.S.P.Q. 2d 1496 (C.D. Cal. 1991) (benefits of stay pending reexamination outweighed burdens of delay). That is because deferring litigation until the USPTO has completed its reexamination has many advantages, including:

- Prior art presented to the court will have first been considered by experts at the USPTO.

- Many discovery problems relating to the prior art can be alleviated by the USPTO reexamination.

- In those cases resulting in effective invalidity of the patent, the suit will likely be dismissed.

- The outcome of reexamination may incur settlement without further use of the court's resources.

- The record of reexamination will likely be entered at trial, thereby reducing the complex stay and length of the litigation.

- Issues, defenses in evidence will be more easily limited in pre-trial conferences after reexamination.

- The litigation cost will likely be reduced for the parties and the Court.

*See* ***Emhart Industries, Inc. v. Seiki Manufacturing Co., Inc***., 3 U.S.P.Q.2d 1889, 1890 (N. D. Ill. 1987). In short, staying the civil litigation pending the outcome of the USPTO reexamination "is a sound means by which the Court may facilitate resolution of this action." *See* ***ASCII Corp**.,* 844 F. Supp. 1381.

As noted above, reexamination "may result in the elimination of most, if not all, of the issues remaining in the pending litigation, thus narrowing and simplifying the issues before the court." ***Gould****,* 705 F.2d at 1340. After the reexamination is completed, "[t]he technical expertise provided by the reexamination proceeding will be helpful to the Court on any issues that remain." ***Eco Star Tech. Corp. v. TeVo, Inc***., 2006 WL 2501494, at *2 (E.D. Tex. 2006). In this case, a stay of this matter pending resolution of the reexamination proceedings is particularly appropriate.

> **E.    Koncelik will not be prejudiced or disadvantaged by a stay.**

Granting a stay pending reexamination of the '776 Patent will not unduly prejudice or present a tactical disadvantage to Koncelik. First, Koncelik does not manufacture beverage makers or otherwise compete with Sunbeam. Koncelik is an inventor only, owning the rights to the '776 Patent. Instead, it appears that Koncelik is attempting to engage in a litigation and/or licensing program, seeking to extract royalties or damages from individuals or entities who actually develop and market allegedly infringing products.

Second, because Koncelik is merely seeking what amounts to a licensing fee, Koncelik has an adequate and easily quantifiable legal remedy despite the delay that might be caused by staying the lawsuit pending reexamination. Money damages will adequately compensate Koncelik, as further evidenced by the fact that Koncelik has never sought any type of preliminary relief before this Court. *See* ***Datatreasury Corp***., 490 F. Supp.2d at 752.

Third, as noted above, Sunbeam has manufactured and marketed beverage makers utilizing the very function Koncelik alleges as being key to his infringement claims -- the function that alters the brewing time, allowing heated water to interface with the ground coffee. Assuming that an adequate investigation had been performed by Koncelik, particularly in light of Sunbeam's pre-suit communications with Koncelik and his legal representatives, Koncelik was aware of the tenuous nature of his claims in this suit. In fact, Koncelik had been made aware of some of the prior art references included in Sunbeam's Request for reexamination of the '776 Patent well before he filed the present suit.

Fourth, the only claims at issue by Koncelik are for the alleged infringment of the '776 Patent. All claims at issue in this suit that are dependent upon the validity of the '776 Patent. As such, a stay of these proceedings will not delay or put on hold any claims by Koncelik against Sunbeam. All of Sunbeam's claims are in some way or another effected by the validity of the '776 Patent. Staying these proceedings will not disrupt or otherwise delay any non-patent claims between the parties here. See **Akzenta Paneele + Profile GmbH v. Unilin Flooring N.C., LLC**., 464 F. Supp.2d 481(D. Md. 2006).

Finally, Koncelik will not be prejudiced because any delay will be limited because the USPTO conducts reexamination proceedings with "special dispatch" and gives priority to those reexaminations where the subject patent is involved in litigation. See 35 U.S.C. §305 and MPEP § 2261.

Sunbeam has requested reexamination of all 16 claims of the '776 Patent. Statistical data shows that claims are modified or cancelled in approximately 95% of all *inter partes* reexamination proceedings.[4] In its first office action in the reexamination, the assigned examiner has rejected all 16 claims of the '776 Patent. Given the probability that the claims will, at a

---

[4] Vachovsky and Saltzberg, *supra* note 1.

minimum, be substantially modified, a stay will greatly simplify the case before trial. Even if the USPTO does not modify or cancel any claim, "a stay will allow the intrinsic evidence to be fully developed before this Court begins the claim constriction process." *E.I. Du Pont De Nemours & Co. v. Phillips Petroleum Co.,* 849 F.2d 1430, 1439 (Fed. Cir. 1988) (holding that statements made during reexamination proceedings relevant prosecution history when interpreting claims).

## CONCLUSION

A stay pending reexamination "is a sound means by which the court may facilitate resolution of this action." Here, all relevant factors weigh in favor of a stay. Thus, Sunbeam respectfully requests that the Court stay these proceedings pending the resolution of the reexamination of the '776 Patent by the USPTO.

HUSCH BLACKWELL SANDERS LLP

*/s/ Michael R. Annis*
Michael R. Annis
Gary A. Pierson, II
720 Olive St., 24th Floor
St. Louis, Missouri 63101
Telephone: (314) 345-6000
Facsimile: (314) 345-6060

*Attorneys for Defendant Sunbeam Products, Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this the 14th day of August, 2008, the foregoing was served by operation of the Court's electronic filing system and/or first-class U.S. mail, postage prepaid, upon the following:

Christopher E. Haigh
THE LAW OFFICE OF CHRISTOPHER HAIGH
2038 N. Clark, #105
Chicago, Illinois 60614

Geoffrey A Baker
Illinois Bar No. 6236658
DOWELL BAKER, P.C.
229 Randolph Street
Oak Park, IL 60302
Telephone: (708) 660-1413
Facsimile: (312) 873-4466

Attorney for Plaintiff Lawrence J. Koncelik, Jr

*/s/ Michael R. Annis*

STLD01-1424036-3