**EXHIBIT B**

**HUSCH**
**BLACKWELL**
**SANDERS**
LLP

Michael R. Annis, Partner
DIRECT 314.345.6432 · FAX 314.345.6060 · mike.annis@huschblackwell.com
720 OLIVE STREET, SUITE 2400 · ST. LOUIS, MO 63101
www.huschblackwell.com

April 15, 2008

Christopher Haigh, Esq.
Christopher E. Haigh
The Law Office of Christopher Haigh
2038 N. Clark, #105
Chicago, Illinois 60614

Re:   *Lawrence J. Koncelik, Jr. v. Jarden Corporation*
      U.S. District Court, Northern District of Illinois, Eastern Division
      Civil Action No. 08-C-623
      Our File No. 718642-1551

Dear Mr. Haigh:

As you know, this law firm has been retained by Sunbeam Products, Inc. d/b/a Jarden Consumer Solution ("Sunbeam") (originally misnamed in the complaint "Jarden Corporation") to represent it in the above-referenced patent infringement lawsuit. The purpose of this letter is to demand that Mr. Koncelik immediately dismiss this action against Sunbeam. As is more fully set forth below, the accused "Infringing Products" identified in Koncelik's complaint cannot infringe any claim of U.S. Patent No. 7,096,776 (the "'776 Patent" or the "patent-in-suit"). Even if the claim limitation of the '776 Patent could be interpreted broadly enough for Koncelik to make an infringement claim, the '775 Patent is invalid as its alleged invention was anticipated by numerous prior art patents.

## NON-INFRINGEMENT.

The independent claims of the '776 Patent require that the "indicator device" at issue must be capable of identifying three (3) separate "states" that either provide a visual indication of the "type of beverage within the beverage receptacle" or provide no indication of the beverage contained within the beverage receptacle. (*See* claims 1 and 14 of the '776 Patent.) Further, the patent-in-suit requires that the "indicator device" must be capable of identifying a "first type of beverage" and a "second type of beverage," where the "second type of beverage differs from the first type of beverage" (claim 1), or where "the first and second types of beverages differ" (claim 14).

The term "differ" means "to be unlike, dissimilar, or distinct in nature or qualities." *See* Random House Webster's College Dictionary, 2nd Edition, 1997. The terms "differ" and "differs" are not particularly defined or supported in the '776 Patent's specifications. Further, there is no indication in the '776 Patent's file wrapper as to what the inventor intended in using those terms. When addressing the distinct nature of the first and second beverages, the inventor does identify a situation where the first *type* of beverage is non-decaffeinated coffee and the

**HUSCH**
**BLACKWELL**
**SANDERS**
LLP

Christopher Haigh, Esq.
April 15, 2008
Page 2

second *type* of beverage is decaffeinated coffee. It is clear that caffeinated and decaffeinated coffee differ in character and quality. Namely, the raw material utilized for preparing those beverages are different. Apparently, the inventor acknowledged this difference at coll. 3, ll.5-8. The same cannot be said for the Sunbeam products at issue. "Strong" coffee and "regular" coffee are nonetheless the same type of beverage – coffee. They are not from a different class or category of "beverage" as they are prepared from the same raw material.

As it relates to the Sunbeam products specifically identified in plaintiff's complaint, the feature at issue – the "brew selector" – allows the user of the devices to select a distinct brew cycle. The "indicator device" for the brew selector function identifies to the user that the end result will be either "regular" or "strong." Regardless of how the consumer uses the brew selector function, the end result is the same – the consumer gets coffee. The brew selector function does not change the characteristic or quality of the product. Under either setting, the same raw materials are utilized to produce the subject beverage.

Simply stated, the patent-in-suit is not infringed by any Sunbeam product.

In order to substantiate your client's claims of infringement relating to the devices cited in paragraph 7 of Koncelik's Complaint, you suggest that the difference in brew strength of coffee -- from "strong" to "regular" -- represents two different beverages. Your suggestion is inconsistent with the ordinary meaning of the key terms in the independent claims of the '776 Patent. To the extent that Plaintiff could ever get a claim construction that would allow such a tortured reading of those necessary claim elements, there is substantial and significant prior art that would anticipate the so construed claims of the '776 Patent. If Mr. Koncelik fails and refuses to dismiss Sunbeam from this action with prejudice immediately, Sunbeam will seek its costs and attorneys' fees incurred in defending this frivolous action.

## INVALIDITY.

In advance of your filing the subject lawsuit, Sunbeam provided you materials that detailed how the "brew selector" function at issue operated. Moreover, you were advised that this function had been utilized by Sunbeam on various of its coffee makers well before Mr. Koncelik conceived of the alleged invention and/or filed the application that matured into the '776 Patent. In fact, you were provided manuals of various Sunbeam products that showed that this function extends the brewing cycle, which effects the saturation of the coffee in the basket. The earlier Sunbeam models identified this function as the "1-4 cup" or small batch mode. Regardless of its title, the function remains the same – there is a different brewing cycle utilized to affect how the ground coffee is saturated. Accordingly, if Plaintiff could obtain a tortured claim construction that would allow the present "brew selector" function to read on the independent claims of the '776 Patent, Sunbeam's utilization of that identical function in prior art models would render those claims invalid. This is commonly stated as "what infringes if it comes after will anticipate if it becomes before."

**HUSCH**
**BLACKWELL**
**SANDERS**
LLP

Christopher Haigh, Esq.
April 15, 2008
Page 3

In addition to providing the operating instructions for the prior-art MR. COFFEE® models, Sunbeam also provided you with certain patent prior art references that render the independent claims of the '776 Patent invalid if construed, as you suggest, to read on devices that allow the user to alter the "strength" of brewed coffee. It is my understanding that you have been provided a copy of U.S. Patent No. 3,430,232 to Martin (the "Martin '232" reference) that issued February 25, 1969 – more than three decades before your client's alleged date of conception. As is clearly seen in figs. 1 and 3, and more particularly described in column 2, lines 46-55, the user operates the indicator device to provide visual depictions of various strengths of coffee. The indicator device electrically communicates with control means (18), which controls the brew cycle of the coffeemaker and in turn controls the illumination of the indicator device. As is more particularly disclosed in column 2, lines 10-19, 22-31 and 46-55, the light of the indicator device is extinguished automatically and no longer identifies the strength of coffee in the coffeemaker after a period of time. I have enclosed a claims chart showing where each and every limitation of claims 1, 4, 5, 14 and 16 of the '776 Patent are specifically disclosed within this reference.[1]

Similarly, I would like to direct your attention to a few additional references including U.S. Patent No. 3,685,692 to Erne (the "Erne '692" reference), which issued August 22, 1972; U.S. Patent No. 3,428,218 to Coja (the "Coja '218" reference), which issued February 18, 1969; and U.S. Patent No. 3,327,615 to Swan (the "Swan '615" reference), which issued June 27, 1967. I provide these references not as a exhaustive list of those that anticipate your proposed construction of the '776 Patent, but to merely provide examples of anticipating patent prior art references. As with the Martin '232 reference, I have provided a claims chart particularly identifying where each and every element of those claims that could arguably be at issue in this suit are found in those references.

I have not bothered to include references which, when combined with other references or standing along, would nonetheless render the alleged invention of the '776 Patent obvious to a person of ordinary skill in the art. Suffice it to say that there are a significant number of prior art references that would have led one skilled in the art to the alleged invention of the '776 Patent.

The Patent Act's fee-shifting provision provides: "The Court in exceptional cases may award reasonable attorneys' fees to the prevailing party." 35 U.S.C. § 285. Although, the Federal Circuit has not provided an exhaustive list of the conduct that can make a case "exceptional," "[t]he prevailing party may prove the existence of an exceptional case by showing: inequitable conduct before the [Patent and Trademark Office]; litigation misconduct, vexatious, unjustified and otherwise bad-faith litigation; a frivolous suit or willful infringement." ***Phonometrics, Inc. v. Westin Hotel Co.***, 350 F.3d 1242, 1246 (Fed. Cir. 2003). Further, "unjustified, vexatious and bad-faith maintenance of [an infringement claim]" creates an exceptional case. ***Id.***

---

[1] As best I can tell, the only claims reasonably at issue with the identified Sunbeam products are claims 1, 4, 5, 14 and 16.

**HUSCH**
**BLACKWELL**
**SANDERS**
LLP

Christopher Haigh, Esq.
April 15, 2008
Page 4

In addition to the exceptional case provisions of the Patent Act, Rule 11 of the Federal Rule of Civil Procedure mandates sanctions against the signer of a pleading or motion if the paper is frivolous or filed for an improper purpose. To avoid "frivolity" in patent infringement cases under Rule 11, "an attorney [must] interpret the pertinent claims of the patent in issue" and "compare the accused device with the construed patent claims." *Antonius v. Spalding & Evenflo Cos., Inc.*, 275 F.3d 1066, 1072 (Fed. Cir. 2002). It is unclear how either you or Mr. Koncelik could have conducted an adequate pre-suit investigation with a comparison of claim terms to the accused infringing devices and have nonetheless elected to proceed with this litigation. This is particularly true with respect to the materials provided by Sunbeam well before suit was filed. The only reasonable explanation for Koncelik to pursue this action is that he is attempting to extract some type of settlement from Sunbeam. Rest assured that Sunbeam will not be intimidated by such tactics and will vigorously defend this suit.

As noted above, Sunbeam demands that Mr. Koncelik immediately dismiss this action with prejudice as against Sunbeam. Failure to immediately dismiss will result in Sunbeam seeking it costs and attorneys' fees incurred in defending this frivolous suit. Your prompt attention to this demand is greatly appreciated.

Very truly yours,

Michael R. Annis

MRA:kal
Enclosure

cc: Gary Pierson, II, Esq.

STLD01-1409175-2 718642/1551

HUSCH
BLACKWELL
SANDERS
LLP

Christopher Haigh, Esq.
April 15, 2008
Page 5

bcc:   Samuel Digirolamo, Esq.
       Larry Shurupoff, Esq.
       Marc Clement, Esq.

## Patent No. 7,096,776

| Claim | Martin '232 | Erne '692 | Coja '218 |
|---|---|---|---|
| 1. An apparatus comprising | | | |
| a timer circuit; and | Circuit shown in Fig. 3 and described at col. 2, ll. 10- "sequential energization of heaters (16) and (17) is automatically accomplished by control means represented schematically by block 18 …". | Figs. 3a and b. Col. 3, ll.19-23, and col. 7, l. 66 – col. 9, l. 8. | Figs. 6a and 6b; Col. 8, l. 57 – col. 9, l. 50. |
| an indicator device which communicates with the timer circuit | Figs. 1-3, and col. 2, ll. 6-55 -- lever structure (21) adapted to carry light (28) with lever (21). Light (28) shines through windows with indicia as described at col. 2, ll. 46-54. As shown in Fig. 3, light (28) electrically communicates with control means (18) via bus. The brew cycle of the coffee maker controls the illumination of light (28). | Figs 1-3a, and 3b. Col. 7, l. 66 – col. 9, l. 8. Lamps (73) communicate with timing circuits (75). | Figs. 1, 2, 4, 6a and 6b. |
| wherein the indicator device can be placed in a first or second state by an operator | Col. 2, ll. 46- 51 -- light (28) is supported adjacent to signal light escutcheon structure (32) such that illumination therefrom shines through one of a plurality of translucent | Figs 1 & 2. Col. 2, ll.54-61; col. 3, ll. 1-22. Push buttons (20-25). | Figs. 1 and 2; Col. 4, ll. 58-71; Col. 5, ll. 34-44. |

| Claim | Patent No. 7,096,776 | | |
|---|---|---|---|
| | Martin '232 | Erne '692 | Coja '218 |
| | windows (33) having suitable indicia thereon indicating, for example, "Reheat," "Mild," "Medium" .... The operator manually places the lever (21) in the place where he/she wants to brew the appropriate strength coffee | | |
| wherein in the first state the indicator device provides a first visual indication of a first type of beverage within a beverage receptacle | Col. 2, ll. 46-51 and Fig. 1. Lever (21) is moved to a particular location to identify the brew strength of the coffee being brewed. While the coffee maker is in the brew cycle, light (28) shines through the window where the lever was located by the operator to identify by appropriate indicia the strength of the coffee being brewed. | Figs. 1 & 2. Col. 3, ll. 1-22. | Figs. 1, 2, 4, 6a and 6b; Col. 4, ll. 58-71; col. 5, ll. 34-44; col. 77, ll. 59-75; and col. 8, l. 57 – col. 9, l. 50. |
| wherein in the second state the indicator device provides a second visual indication of a second type of beverage within the beverage receptacle, wherein the second type of | Fig. 1 and col. 2, ll. 46-55 -- there are multiple windows with indicia to identify the strength of the coffee being brewed by the machine – "Mild," "Medium," "Strong", etc.<br><br>As the lever (21) is moved, | Figs. 1 & 2. Col. 3, ll. 1-22. | Figs. 1, 2, 4, 6a and 6b; Col. 4, ll. 58-71; col. 5, ll. 34-44; col. 77, ll. 59-75; and col. 8, l. 57 – col. 9, l. 50. |

2

## Patent No. 7,096,776

| Claim | Martin '232 | Erne '692 | Coja '218 |
|---|---|---|---|
| beverage differs from the first type of beverage | light (28) is likewise moved to another window to illuminate indicia identifying a different strength of coffee being brewed while the coffee maker is in the brew cycle.<br><br>Plaintiff alleges that different strengths of coffee represents "different types of beverages" | | |
| and wherein the timer circuit can be programmed to automatically change the indicator device after a certain period of time from the first or second state to a third state, wherein in the third state, the indicator device no longer provides a visual indication of what type of beverage is within the beverage receptacle. | Fig. 3 and col. 2, lls 10-19, ll. 24-31 and 46-55.<br><br>Light (28) is extinguished automatically when heater (16) is deenergized. When light (28) is deenergized, it no longer identifies the strength of the coffee in the coffee maker (10).<br><br>When the brew cycle is terminated, light (28) is deenergized along with heater (17) as they are wired in parallel. | Figs. 1 & 2.<br>Col. 3, ll. 1-22; col. 7, l. 66 – col. 9, l. 8 and col. 9, l. 28 – col. 10, l. 29.<br>After beverage is dispensed, "bulbs (73) lighting pressed button (20-25) goes out" as directed by timing circuits (75). | Figs. 1, 2, 4, 6a and 6b;<br>Col. 4, ll. 58-71; col. 5, ll. 34-44; col. 7, ll. 69-75; and col. 8, l. 57 – col. 9, l. 50. |
| 4. The apparatus of claim 1 wherein | | | |

STLD01-1412793-1

## Patent No. 7,096,776

| Claim | Martin '232 | Erne '692 | Coja '218 |
|---|---|---|---|
| the first visual indication is a designation of the first type of beverage and is comprised of least one alphanumeric character; and | Fig. 1. | Fig. 1, Col. 2, ll. 54-60. | Figs. 1 and 2. |
| the second visual indication is a designation of the second type of beverage and is comprised of at least one alphanumeric character. | Fig. 1. | Fig. 1, Col. 2, ll. 54-60. | Figs. 1 and 2. |
| 5. The apparatus of claim 1 wherein the beverage receptacle is a coffee pot. | Col. 1, ll. 9-11 | | |
| 14. A method comprising the steps of | | | |
| fixing an indicator device and a timer circuit on a coffee machine; | Figs. 1-3, col. 2, ll.6-54. | Figs. 1 & 3b (not a coffee machine) | Figs. 2, 4, 6a-6b, 8 and 9. (not a coffee machine) |
| wherein the indicator device can be placed into a first state or a second state by an operator | Col. 2, ll. 46-54. | Col. 2, ll. 54-61. | Figs. 1, 2, 4, 6a and 6b; Col. 3, ll. 54-59; Col. 4, ll. 58-71. |
| wherein when the indicator device is placed in | Fig. 1 and col. 2, ll.46-54. | Col. 2, ll. 54-61. | Figs. 1, 2, 4, 6a and 6b; |

4

## Patent No. 7,096,776

| Claim | Martin '232 | Erne '692 | Coja '218 |
|---|---|---|---|
| a first state the indicator device provides a first visual indication of a first type of beverage which is within a coffee receptacle; | | | Col. 3, ll. 54-59; Col. 4, ll. 58-71. |
| wherein when the display device is placed in a second state the indicator device provides a second visual indication of a second type of beverage which is within the coffee receptable; and | Fig. 1, col. 2, ll 46-54. | Col. 2, ll. 54-61. | Figs. 1, 2, 4, 6a and 6b; Col. 3, ll. 54-59; Col. 4, ll. 58-71. |
| wherein the first and second type of beverages differ and the first and second visual indications differ; | Fig. 1, col. 2, ll. 46-54. | Col. 2, ll. 54-61. | Figs. 1, 2 and 4. |
| and wherein the timer circuit, after a certain period of time, causes the indicator device to automatically change from the first or second state to a third state in which the indicator | Fig. 3 and col. 2, ll. 6-54 | Col. 3, ll. 19-23 and Col. 7, l. 66 – Col. 9, l. 8. | Figs. 1, 2, 4, 6a and 6b; Col. 4, ll. 58-71; col. 5, ll. 34-44; col. 7, ll. 69-75; and col. 8, l. 57 – col. 9, l. 50. |

5

| Claim | Patent No. 7,096,776 | | |
|---|---|---|---|
| | Martin '232 | Erne '692 | Coja '218 |
| device does not indicate what type of beverage is within the coffee receptacle. | | | |
| 16. The method of claim 14 wherein | | | |
| the first visual indication is a designation of the first type of beverage and is comprised of least one alphanumeric character; and | Fig. 1, and col. 2, ll. 46-54. | Fig. 1. Col. 2, ll. 54-60. | Figs. 1 and 2. |
| the second visual indication is a designation of the second type of beverage and is comprised of at least one alphanumeric character. | Fig. 1, and col. 2, ll. 46-54. | Fig. 1. Col. 2, ll. 54-60. | Figs. 1 and 2. |

STLD01-1412793-1

## Patent No. 7,096,776

| Claim | Swan '615 | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 1. An apparatus comprising | | | | | | | | |
| a timer circuit; and | Fig. 5. Col. 3, l. 23. | | | | | | | |
| an indicator device which communicates with the timer circuit | Fig. 5. Col. 3, l. 44 – Col. 4, l. 39. | | | | | | | |
| wherein the indicator device can be placed in a first or second state by an operator | Col. 2, ll. 12-16; col. 3, ll. 44-48. | | | | | | | |
| wherein in the first state the indicator device provides a first visual indication of a first type of beverage within a beverage receptacle | Figs. 1, 5 and 6. Col. 3, l. 44 – col. 4, l. 9. | | | | | | | |
| wherein in the second state the indicator device provides a second visual indication of a second type of beverage within the beverage receptacle, wherein the second type of beverage differs from the first type of beverage | Figs. 1, 5 and 16. Col. 4, ll. 10-29. | | | | | | | |
| and wherein the timer circuit can be | Col. 3, l. 44 – col. 4, l. 39. | | | | | | | |

7

## Patent No. 7,096,776

| Claim | Swan '615 |
|---|---|
| programmed to automatically change the indicator device after a certain period of time from the first or second state to a third state, wherein in the third state, the indicator device no longer provides a visual indication of what type of beverage is within the beverage receptacle. | |
| 4. The apparatus of claim 1 wherein | |
| the first visual indication is a designation of the first type of beverage and is comprised of least one alphanumeric character; and | Figs. 1 and 9. |
| the second visual indication is a designation of the second type of beverage and is comprised of at least one alphanumeric character. | Figs. 1 and 9. |

8

## Patent No. 7,096,776

| Claim | Swan '615 | | | |
|---|---|---|---|---|
| 5. The apparatus of claim 1 wherein the beverage receptacle is a coffee pot. | Fig. 1. | | | |
| 14. A method comprising the steps of | | | | |
| fixing an indicator device and a timer circuit on a coffee machine; | Figs. 5. Col. 3, l. 44 – col. 4, l. 39. | | | |
| wherein the indicator device can be placed into a first state or a second state by an operator | Fig. 1. | | | |
| wherein when the indicator device is placed in a first state the indicator device provides a first visual indication of a first type of beverage which is within a coffee receptacle; | Fig. 1. | | | |
| wherein when the display device is placed in a second state the indicator device provides a second visual indication of a second type of beverage which is within the coffee receptable; | Fig. 1. | | | |

STLD01-1412793-1

| Patent No. 7,096,776 | | |
|---|---|---|
| Claim | Swan '615 | |
| and | | |
| wherein the first and second type of beverages differ and the first and second visual indications differ; | Fig. 1. | |
| and wherein the timer circuit, after a certain period of time, causes the indicator device to automatically change from the first or second state to a third state in which the indicator device does not indicate what type of beverage is within the coffee receptacle. | Col. 3, l. 44 – col. 4, l. 39. | |
| 16. The method of claim 14 wherein | | |
| the first visual indication is a designation of the first type of beverage and is comprised of least one alphanumeric character; and | Fig. 1. | |
| the second visual indication is a designation of | Fig. 1. | |

10

| Patent No. 7,096,776 | |
|---|---|
| Claim | Swan '615 |
| the second type of beverage and is comprised of at least one alphanumeric character. | |

STLD01-1412793-1