# EXHIBIT D

 UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 95/001,044 | 06/26/2008 | J 7096776 | 718642.1656 | 8589 |

7590        08/01/2008

MR. WALTER J. TENCZA JR.
10 STATION PLACE
SUITE 3
METUCHEN, NJ 08840

| EXAMINER |
|---|
| FOSTER, JIMMY G |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3993 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 08/01/2008 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A (Rev. 04/07)

| *OFFICE ACTION IN INTER PARTES REEXAMINATION* | Control No. 95/001,044 | Patent Under Reexamination 7096776 | |
|---|---|---|---|
| | Examiner JIMMY G. FOSTER | Art Unit 3993 | |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address. --*

Responsive to the communication(s) filed by:
Patent Owner on _____
Third Party(ies) on <u>26 June 2008</u>

**RESPONSE TIMES ARE SET TO EXPIRE AS FOLLOWS:**

*For Patent Owner's Response*:
    <u>2</u> MONTH(S) from the mailing date of this action. 37 CFR 1.945. EXTENSIONS OF TIME ARE GOVERNED BY 37 CFR 1.956.
*For Third Party Requester's Comments on the Patent Owner Response:*
    30 DAYS from the date of service of any patent owner's response. 37 CFR 1.947. NO EXTENSIONS OF TIME ARE PERMITTED. 35 U.S.C. 314(b)(2).

**All correspondence** relating to this inter partes reexamination proceeding should be directed to the **Central Reexamination Unit** at the mail, FAX, or hand-carry addresses given at the end of this Office action.

This action is not an Action Closing Prosecution under 37 CFR 1.949, nor is it a Right of Appeal Notice under 37 CFR 1.953.

**PART I. THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:**

1. ☐ Notice of References Cited by Examiner, PTO-892
2. ☐ Information Disclosure Citation, PTO/SB/08
3. ☐ _____

**PART II.  SUMMARY OF ACTION:**

1a. ☒ Claims <u>1-16</u> are subject to reexamination.

1b. ☐ Claims _____ are not subject to reexamination.

2.  ☐ Claims _____ have been canceled.

3.  ☐ Claims _____ are confirmed. [Unamended patent claims]

4.  ☐ Claims _____ are patentable. [Amended or new claims]

5.  ☒ Claims <u>1-16</u> are rejected.

6.  ☐ Claims _____ are objected to.

7.  ☐ The drawings filed on _____     ☐ are acceptable    ☐ are not acceptable.

8.  ☐ The drawing correction request filed on _____ is:    ☐ approved.   ☐ disapproved.

9.  ☐ Acknowledgment is made of the claim for priority under 35 U.S.C. 119 (a)-(d). The certified copy has:
       ☐ been received.    ☐ not been received.    ☐ been filed in Application/Control No _____.

10. ☐ Other _____

Application/Control Number: 95/001,044                                    Page 2

Art Unit: 3993

This first Office action on the merits is being mailed together with the order granting reexamination. 37 CFR 1.935.

Claims 1, 4, 5, 14 and 16:

(A) Rejection:

The following is a quotation of the appropriate paragraphs of 35 U.S.C. 102 that form the basis for the rejections under this section made in this Office action:

A person shall be entitled to a patent unless –

(b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of application for patent in the United States.

Claims 1, 4, 5, 14 and 16 are rejected under 35 U.S.C. 102(b) as being anticipated by U. S. Patent No. 3,430,232 to Martin.

Martin discloses an apparatus in the form of a coffee maker.

The coffee maker of Martin includes an indicator device defined by a signal or pilot light 28 carried on a hook shaped member for rotation with a selecting lever 21. A user manipulates a lever 21 in order to move the indicator light 28 horizontally (see col. 2, lines 42-46). When selection is made, illumination from the indicator light 28 will shine through one of several translucent windows 33 that is been labeled with suitable indicia to indicate whether the coffee being brewed is mild, medium or strong, or that the coffee instead is being reheated (see col. 2, lines 46-51).

Thus, Martin discloses an indicator device that may be placed by an operator in a first state to indicate (for example) a mild coffee, which is a first beverage type, or may be placed by the operator in a second state to indicate a strong coffee, which is a second beverage type.

Additionally, Martin discloses a timer circuit defined by a control means 18 that reverses the heaters 16, 17 of the coffee pot at the end of the brew cycle (see col. 2, lines 10-13 and 24-28). At termination of the brewing cycle, the pump well heater 16 will be de-energized as the warming heater 17 is energized. The indicator light 28, which is connected in parallel with the heater 16, will be de-energized with that heater (see Fig. 3; col. 1, lines 49-53; col. 2, lines 51-55). By the fact that the control means 18 coordinates the time of de-energizing the heater 16 and indicator lamp 28 to be with the end of the brewing cycle, the control means even though described as thermostatic may be reasonably said to constitute a timer circuit. Moreover, a "timer" is *a switch or regulator that controls or activates another mechanism at fixed intervals*. A strong brewing cycle for an automatic coffee maker when making the same number of cups of coffee will have a constant length of time.

Application/Control Number: 95/001,044                                    Page 3
Art Unit: 3993

     Accordingly, the apparatus of Martin includes an indicator device that communicates with a timer circuit.

     The de-energizing of the lamp 28 at the end of the brewing cycle defines an automatic change to a third state of the indicator device, in which the indicator device no longer provides a visual indication of what type of beverage (mild, medium or strong) is within the beverage receptacle (coffee maker). Thus, the timer circuit/control means may be said to be programmed to automatically change the indicator device from a first state or second state to a third state that no longer provides indication of the type of beverage in the receptacle/coffee maker.

     Accordingly, claim 1 is anticipated by Martin.

     Further regarding claim 4, which is dependent on claim 1 and (1) calls for the first visual indication to be a designation of the first type of beverage and to be comprised of at least one alphanumeric character and (2) additionally calls for the second visual indication to be a designation of the second type of beverage and to be comprised of at least one alphanumeric character, such does not distinguish over Martin. More specifically, the indicator light 28 of Martin will, for example, illuminate behind a first window that is marked with the word "Mild" and will alternatively illuminate behind a second window that is marked with the word "Strong", depending on the location to which the light 28 has been positioned (see col. 1, lines 41-48; col. 2, lines 42-51).

     Accordingly, claim 4 is anticipated by Martin.

     Further regarding claim 5, which is dependent on claim 1 and calls for the apparatus to be a coffee pot, such does not distinguish over Martin. The device of Martin is a coffee maker which brews and warms coffee that is in the maker (see col. 2, lines 7-19 and 28-31), and that includes a spout 11 for pouring the coffee and includes a open end closed by a cover 13 for enclosing the coffee.

     Accordingly, claim 5 is anticipated by Martin.

     Regarding claim 14, which is to a method, the reference of Martin discloses a step of fixing an indicator and a timer circuit on a coffee machine. More specifically, it is the object of Martin to provide, in an automatic coffee maker, means for signaling the condition of the coffee maker and the condition of the contents therein (see col. 1, lines 26-33). As pointed out above as to claim 1, the timer circuit/control means 18 is connected with an indicator light 28 in a coffee maker (see Figs. 2, 3; col. 2, lines 10-13 and 51-55).

     For the reasons pointed out above regarding claim 1, the indicator device of Martin (i.e., light 28 carried on a lever structure), can be placed in a first state by an operator for indicating a first coffee beverage type and can be alternatively placed in a second/different state by the operator for indicating a second/different coffee beverage type. When the light 28 is illuminated and located (for example) behind the window marked for mild coffee, such a condition will indicate that mild coffee is being brewed. Alternatively, when the light 28 is illuminated and located (for example) behind the window marked for strong coffee, such a condition will indicate that a strong coffee is being brewed.

     Also as explained above regarding claim 1, when brewing has finished in the coffee maker of Martin, the control means/timer circuit 18 will shut off the pump well heater 16 and

Application/Control Number: 95/001,044                                          Page 4

Art Unit: 3993

turn off the indicator light 28, no longer indicating that the mild or strong coffee (for example) is being brewed. Thus, at the time that brewing has finished, the timer circuit will automatically change the indicator device to a third state in which indicator device no longer indicates the coffee beverage type in the coffee receptacle.

Accordingly, claim 14 is anticipated by Martin.

Further regarding claim 16, which is dependent from claim 14 and (1) calls for the first visual indication to be a designation of the first type of beverage and to be comprised of at least one alphanumeric character and (2) additionally calls for the second visual indication to be a designation of the second type of beverage and to be comprised of at least one alphanumeric character, such does not distinguish over Martin. More specifically, the indicator light 28 of Martin will, for example, illuminate behind a first window that is marked with the word "Mild" and will alternatively illuminate behind a second window that is marked with the word "Strong", depending on the location to which the light 28 has been positioned (see col. 1, lines 41-48; col. 2, lines 42-51).

Accordingly, claim 16 is anticipated by Martin.

This rejection of claims was proposed in the Request in sections A-E on pages 30-35 in Claim Chart BB and is substantially <u>adopted</u> for the reasons as proposed.

<u>Claims 1, 4, 5, 14 and 16</u>:

(A) Rejection:

The following is a quotation of 35 U.S.C. 103 which forms the basis for all obviousness rejections set forth in this Office action:

(a)    A patent may not be obtained though the invention is not identically disclosed or described as set forth in  section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

(b) (1)    Notwithstanding subsection (a), and upon timely election by the applicant for patent to proceed under this subsection, a biotechnological process using or resulting in a composition of matter that is novel under  section 102 and nonobvious under subsection (a) of this section shall be considered nonobvious if-

(A)    claims to the process and the composition of matter are contained in either the same application for patent or in separate applications having the same effective filing date; and

(B)    the composition of matter, and the process at the time it was invented, were owned by the same person or subject to an obligation of assignment to the same person.

(2)    A patent issued on a process under paragraph (1)-

Application/Control Number: 95/001,044                                                            Page 5

Art Unit: 3993

      (A)    shall also contain the claims to the composition of matter used in or
made by that process, or

      (B)   shall, if such composition of matter is claimed in another patent, be set to
expire on the same date as such other patent, notwithstanding section 154.

      (3)   For purposes of paragraph (1), the term "biotechnological process" means-

      (A)    a process of genetically altering or otherwise inducing a single- or multi-
celled organism to-

      (i)   express an exogenous nucleotide sequence,

      (ii)   inhibit, eliminate, augment, or alter expression of an endogenous
nucleotide sequence, or

      (iii)   express a specific physiological characteristic not naturally associated
with said organism;

      (B)   cell fusion procedures yielding a cell line that expresses a specific protein,
such as a monoclonal antibody; and

      (C)   a method of using a product produced by a process defined by
subparagraph (A) or (B), or a combination of subparagraphs (A) and (B).

      (c) (1)   Subject matter developed by another person, which qualifies as prior art only
under one or more of subsections (e), (f), and (g) of section 102 of this title, shall not
preclude patentability under this section where the subject matter and the claimed
invention were, at the time the claimed invention was made, owned by the same
person or subject to an obligation of assignment to the same person.

      (2)   For purposes of this subsection, subject matter developed by another person
and a claimed invention shall be deemed to have been owned by the same person or
subject to an obligation of assignment to the same person if —

      (A)   the claimed invention was made by or on behalf of parties to a joint
research agreement that was in effect on or before the date the claimed invention
was made;

      (B)   the claimed invention was made as a result of activities undertaken within
the scope of the joint research agreement; and

      (C)   the application for patent for the claimed invention discloses or is
amended to disclose the names of the parties to the joint research agreement.

      (3)   For purposes of paragraph (2), the term "joint research agreement" means a
written contract, grant, or cooperative agreement entered into by two or more persons
or entities for the performance of experimental, developmental, or research work in the
field of the claimed invention.

Claims 1, 4, 5, 14 and 16 are rejected under 35 U.S.C. 103 as being unpatentable over Martin in
view of U.S. Patent No. 3,685,692 to Erne, U.S. Patent No. 3,428,218 to Coja, U.S. Patent No.
3,327,615 to Swan, the U.S. Patent Application Publication No. 2002/0020300 to Koncelik (the
Koncelik '300 publication), U.S. Patent No. 5,509,349 to Anderson, U.S. Patent No. 5,183,998
to Hoffman, the published User Manual - Mr. Coffee® 12-Cup Coffeemaker ES Series (ES
Manual), the published User Manual - Mr. Coffee® 12-Cup Coffeemaker AP Series (AP
Manual), the published Operating Instructions for Mr. Coffee® PRX30/33 Coffeemakers (PRX
Manual), the published Operating Instructions for the Mr. Coffee® *Speed*brew[TM] Coffeemaker:
DSP (DSP Manual), and U.S. Patent No. 5,901,635 to Lucas.

Claim 1:

Application/Control Number: 95/001,044                                    Page 6
Art Unit: 3993

     The discussion, above, regarding Martin in the previous rejection of claim 1, 4, 5, 14 and 16 and what Martin discloses is incorporated in this rejection.

     To the extent that "timer circuit" refers to determining the elapse of a fixed time period, it would have been obvious over any of Erne, Coja, Swan, Anderson, Hoffman, the ES Manual, the AP Manual and the PRX Manual to have provided the coffee maker of Martin with a timer circuit that determines the elapse of a fixed time period.

     Erne teaches using a timer for preparing/dispensing a beverage.  In Erne a lamp 73, which has been lit by a button selection for selecting a beverage, is designed to go out after the beverage is dispensed, upon the direction of a timing circuit 75 (see col. 3, lines 20-23; col. 7, line 66 - col. 9, line 8; col. 9, line 28 - col. 10, line 29).  Thus after dispensing, the lamp will no longer indicate the type of beverage which was chosen to be served.

     Coja also teaches using a timer for preparing/dispensing a beverage. In Coja, a light 85, which has been lit to indicate the chosen drink to be dispensed, will become unlit when the dispensing is terminated (see col. 4, lines 58-70).  Dispensing will become terminated based upon the timed discharge of a capacitor 99 (see col. 8, line 71 - col. 9, line 8; col. 9, lines 26-50). Thus, the timed discharge of the capacitor will, in effect, cause the light 85 to become unlit.

     Swan teaches using a timer for preparing/dispensing a beverage.  In Swan, after the selected beverage is prepared and dispensed, a timer circuit in the form of an accurate timed delay relay 106 stops a timer motor 112 and an associated rotating switch 116, and the machine becomes reset to its original state (see col. 4, lines 7-9).

     Anderson teaches using a timer for the preparing/dispensing a coffee beverage.  In Anderson, timers are used for the milk delivery and grinding stage processes of the pour cycle (see col. 15, lines 18-24; col. 16, lines 6-10; Fig. 14).  This is on an apparatus that indicates, by a display window 9-16, the type of coffee drink that has been selected and is being made.  After completion and dispensing of the drink, the confirmation of the drink is removed from the alphanumeric display, and the term "SELECT DRINK" is again displayed in its place (see col. 15, lines 1-3; FIG. 14), thereby obviously no longer displaying the indication the type of beverage in the beverage receptacle.  Furthermore, the apparatus also includes a watchdog timer, when perhaps there has been a program glitch, that will, after a time, reset the apparatus including the display thereof, thus clearing any indication there might have been of a selected drink indicated on the display window 9-16 (see col. 13, lines 32-37).

     Hoffman (see FIG. 5A; col. 11, lines 43-49), the ES Manual (see page 5), the AP Manual (see page 5) and the PRX Manual (see page 6) all teach providing a shut-off timer on a coffee maker.  The ES Manual and AP Manual describe the automatic shut-off feature as being a safety feature.  Further, the teachings of Hoffman and the PRX Manual disclose shutting off the entire coffee maker.  Shutting off a coffee maker would be expected to cause any beverage indicator on the coffee maker to be shut off as well.  An automatic shut-off on a coffee maker, while a safety feature, is also a convenience feature, so that the coffee maker with and activated warmer plate is not left "on" and unattended for an extended period of time, causing coffee to evaporate away and create a rank odor.

     Accordingly, for the reasons of providing a fixed time period for the preparation of the coffee in Martin, it would have been obvious in view of the teachings of Erne, Coja, Swan and Anderson to have made the control means 18 of Martin with a timer circuit based upon a the elapse of a particular time period for determining the brewing time and strength of the coffee.

And, further, it would have been obvious in view of Hoffman, the ES Manual, the AP Manual, the PRX Manual to have provided the coffee maker of Martin with a shut-off timer for shutting off the coffee maker as a safety or convenience feature, which would incidentally also shut off all coffee-related indicators.

To the extent that "type of beverage" refers to more than a strength of the brew but can be considered a determination of whether a beverage is formed with different constituents, such as with caffeinated or decaffeinated coffee, Lucas teaches that faster brewing is to be used for caffeinated coffee, and slower brewing is to be used for decaffeinated coffee (see col. 1, lines 24-34). Moreover, Lucas further teaches that the adjustment of a coffee maker with regard to brewing time may made by using a positioned selector. The selector which, in essence, will select a faster brew time or a slower brew time by positioning to a desired position regarding caffeinated or decaffeinated coffee respectively, will indicate the type of beverage (caffeinated or decaf) by incidence of its positioning. If the selector is turned to the "Regular" marking on the cover (see col. 9, lines 17-20), then the coffee maker is set for making caffeinated coffee, whereas if the selector is positioned away from the "Regular" marking, then the coffeemaker will be set for making decaffeinated coffee. The DSP Manual (see page 4), having a similar feature, will brew 10 cups of caffeinated coffee in 3 minutes, but take longer to brew decaffeinated coffee (see page 4). Accordingly, it would have been obvious in view of Lucas and the DSP Manual to have provided a mechanism on the coffee maker of Martin for selecting and indicating the time of brewing with respect to the beverage being a caffeinated or decaffeinated coffee.

Further, the DSP Manual also teaches that a coffee maker may be provided with the visual indications "caffeinated" and "decaffeinated" and with its selector which is positioned to one of said indications (see pages 6 and 8). And the Koncelik '300 publication similarly teaches that alphanumeric visual indications may be provided on a Coffee maker for indicating whether the coffee maker holds caffeinated or decaffeinated coffee (see, for example, Fig. 1). For achieving the brew time appropriate to caffeinated or decaffeinated coffee, it would further have been obvious in view of the DSP Manual to have, first, adjusted the mild and strong brewing times of Martin for caffeinated and decaffeinated coffee and to have provided indicia on the transparent windows 33 of Martin for indicating caffeinated and decaffeinated coffee selections in relation to those brewing times. Further, in order to indicate what coffee has already been brewed, it also would have been obvious in view of the Koncelik '300 publication to have provided manipulable indicia on the coffee maker of Martin for indicating whether caffeinated or decaffeinated coffee is located therein.

The examiner notes, moreover, that the teaching of the Koncelik '300 publication which describes illuminated buttons (e.g., 118, 120) for selecting an indication of whether the coffee already brewed is caffeinated or decaffeinated, would appear to provide such an indication as long as the coffee maker is turned on. Thus, additionally obviously providing a shut-off timer for safely shutting off the coffee maker, in accordance to the teachings of Hoffman and the PRX Manual, would be expected to create a shut-off event that turns off such illuminated buttons.

Accordingly, claims 1, 5 and 14 would have been obvious over Martin in view of Erne, Coja, Swan, the Koncelik '300 publication, Anderson, Hoffman, the ES Manual, the AP Manual and the PRX Manual, the DSP Manual, and Lucas.

Further regarding claims 4 and 16, which (1) call for the first visual indication to be a designation of the first type of beverage and to be comprised of at least one alphanumeric character and (2) additionally call for the second visual indication to be a designation of the second type of beverage and to be comprised of at least one alphanumeric character, such does not distinguish over the art combination. For example, the Koncelik '300 publication, the DSP Manual and Lucas all suggest providing alphanumeric indicia on a coffee Maker for indicating caffeinated or decaffeinated coffee. It would have been obvious in view of these teachings to provide alphanumeric indicia on the coffee maker of Martin for indicating selection of caffeinated or decaffeinated coffee as part of selecting the brewing strength.

This rejection of claims 1, 4, 5, 14 and 16 constitutes a compilation of all the proposed prior art rejections presented in sections F-J on pages 35-46 of the Request and in Claim Chart BB and combines together prior art references of those proposed rejections which essentially suggest the same claimed feature. The rejection of the claims is otherwise substantially <u>adopted</u> for the reasons as proposed in the Request, set forth on pages 35-46 of the Request and in said claim chart.

Claims 1, 4, 5, 14 and 16:

(A) Rejection:

Claims 1, 4, 5, 14 and 16 are rejected under 35 U.S.C. 102(b) as being anticipated by Erne.
        Erne discloses an apparatus in the form of a beverage maker.
        The beverage maker of Erne includes a timer circuit/timing circuit 75 and an indicating device, defined by lamps 73, which communicate with the timer circuit 75. This is indicated in the circuit of Figure 3B. The timer circuit 75 controls the amount of beverage that is dispensed (see col. 8, lines 63-64). When any of the buttons 20-25 is pushed by an operator/user, the lamp 73 of that button lights up (see col. 2, lines 54-60; col. 7, line 66 - col. 8, line 7). The timing circuit 75 is then activated to cause the selected beverage to flow (see col. 9, line 27 - col. 10, line 27). Afterwards, an output signal from the timer circuit 75 will clear the activated storage 70, which (in view of the circuit) will turn off the lamp 73 associated therewith (see Fig. 3b; also col. 3, lines 17-23).
        The buttons 20-25 are used to select a particular type beverage from several available kinds of beverage (col. 3, lines 13-17). Each is associated with its own lamp 73 which lights up when the button is pushed. Thus, the reference of Erne discloses an indicator device that is placed in a first state, such as when button 20 is pushed and is lit up, and that alternatively is placed in a second state, such as when button 22 is pushed and is lit up. The two states are indicative respectively of two types of beverage.
        The timing circuit 75 controls the amount of beverage dispensed, and when the dispensing of beverage has concluded the light goes out. Therefore, timing circuit 75, in effect,

Application/Control Number: 95/001,044                                    Page 9
Art Unit: 3993

places the indicator device in a third state in which the light goes out and no longer indicates the type of beverage.

Thus claim 1 is anticipated by Erne.

Regarding claim 4, which is dependent on claim 1 and (1) calls for the first visual indication to be a designation of the first type of beverage and to be comprised of at least one alphanumeric character and (2) additionally calls for the second visual indication to be a designation of the second type of beverage and to be comprised of at least one alphanumeric character, such does not distinguish over Erne. More specifically, Erne teaches that each of the six pushbuttons 20-25 includes a *number* corresponding to a particular beverage to be output from pipes 4-9. Lighting the pushed button would indicate the number and therefore the specific beverage being dispensed (see Fig. 1; col. 2, lines 54-60).

Thus claim 4 is anticipated by Erne.

Regarding claim 5 which is dependent on claim 1 and calls for the beverage receptacle to be a coffee pot, such a limitation does not distinguish over Erne. While the machine/dispenser of Erne is not disclosed as a coffee pot or coffee maker, the containers 10 which receive the drinks may be considered to define "pots" which are capable of holding any beverage, including coffee even though coffee is not disclosed. Thus, inasmuch as claim 5 is not structurally reciting coffee and the containers 10 may be considered to define pots, the limitation in claim 5 is met by any one of the containers 10 of Erne.

Thus claim 5 is anticipated by Erne.

Regarding claim 14, which is to a method, the reference of Erne discloses a step of fixing an indicator and a timer circuit on a machine. More specifically, the six pushbuttons 20-25 of Erne are mounted at the bottom of the front panel 2 of the apparatus, and each button includes a number that will indicate the beverage being dispensed when it is lit by a lamp 73 (see col. 2, lines 54-60; col. 7, line 66 - col. 8, line 7). Further, there is a timer circuit 75 connected to a pre-selector switch 36 of the circuit of the apparatus (see col. 8, lines 36-39).

For the reasons pointed out above regarding claim 1, the indicator device of Erne, i.e., the pushbuttons 20-25 with their lamps 73, can be placed in a first state by an operator pushing one of pushbutton 20-25 and lighting a lamp for indicating a first beverage type to be dispensed and can be alternatively placed in a second/different state by the operator pushing another of the pushbuttons and lighting another lamp for indicating a second/ different beverage type to be dispensed. When one lamp 73 is illuminated and makes luminous the pushbutton marked with a particular drink number, this will indicate that a particular drink corresponding to that number is being dispensed. Alternatively, when the lamp associated with another pushbutton having a different number illuminates that pushbutton, this will indicate that the beverage associated with that different number is being dispensed.

Also, as explained above regarding claim 1, the timer circuit 75 is used to control the amount of the selected beverage that is dispensed (see col. 8, lines 63-64), and when the dispensing of beverage has concluded the light goes out (see col. 3, lines 20-23). This is apparently caused by the timer circuit clearing the storage 70 (see col. 10, lines 25-37; Fig 3b). Therefore, the timer circuit 75, in effect, places the indicator device in a third state in which the

Application/Control Number: 95/001,044                                    Page 10
Art Unit: 3993

light goes out and no longer indicates the type of beverage being dispensed; the apparatus is thereby ready for a new selection to be made by pushing another pushbutton.

Regarding the recitations that refer to a coffee receptacle and coffee machine, the beverages in Erne are ultimately dispensed from beverage containers (i.e., receptacles) (see col. 4, lines 41-50) and are dispensed into containers/glasses 10 (i.e., receptacles). Claim 14 does not recite coffee in the claim but recites a coffee receptacle and a coffee machine. Inasmuch as any one of the containers disclosed by Erne is capable of containing coffee as opposed to liquor and the apparatus is then capable of dispensing such coffee, the apparatus of Erne meets what is claimed in claim 14 regarding a coffee receptacle and coffee machine.

Accordingly, claim 14 is anticipated by Erne.

Regarding claim 16, which is dependent on claim 14 and (1) calls for the first visual indication to be a designation of the first type of beverage and to be comprised of at least one alphanumeric character and (2) additionally calls for the second visual indication to be a designation of the second type of beverage and to be comprised of at least one alphanumeric character, such does not distinguish over Erne. More specifically, Erne teaches that the each of the six pushbuttons 20-25 includes a number designated corresponding to a particular beverage to be output from pipes 4-9. Lighting the pushed button would indicate the number and therefore the specific beverage being dispensed (see Fig. 1; col. 2, lines 54-60).

Thus claim 16 is anticipated by Erne.

The rejection of claims 1, 4 and 16 on Erne is being <u>adopted</u> substantially for the reasons as proposed in the Request in sections A-D on pages 46-49 and in Claim Chart CC. Claims 5 and 14, which are also rejected on Erne, were not proposed but are added by the Examiner.

Claim 1, 4, 5, 14 and 16:

(A) Proposed Rejection- Not Adopted:

Claims 1, 4, 5, 14 and 16 have been proposed to be rejected under 35 U.S.C. 103 as being unpatentable over Erne in view of various combinations of Martin, Coja, Swan, the Koncelik '300 publication, Anderson, Hoffman, the ES Manual, the AP Manual, the PRX Manual, the DPS Manual, and/or Lucas.

This proposed rejection, which essentially was presented in the Request in sections E-I on pages 49-63 and in Claim Chart CC, is <u>not adopted</u>.

Erne anticipates claims 1, 4, 5, 14 and 16 for the reasons given above and thus discloses all that is claimed. Inasmuch as 35 U.S.C. § 103 requires that there be "differences between the subject matter sought to be patented and the prior art", there is no basis for rejecting under 35 U.S.C. § 103 when the Erne, which defines the prior art, meets all that is claimed.

Application/Control Number: 95/001,044                                         Page 11
Art Unit: 3993

Claims 1, 4, 5, 14 and 16:

(A) Rejection:

Claims 1, 4, 5, 14 and 16 are rejected under 35 U.S.C. 102(b) as being anticipated by Coja.
       Coja discloses an apparatus in the form of a beverage maker.
       The beverage maker of Coja includes an indicator device, defined by each light 85 which
lights a respective head 13 associated with each one of plural bottles 9, which becomes lit upon
pressing a desired button 7 (see col. 4, lines 61-65), thereby indicating the particular bottle.
Pushing one button places the indicator device in a first state which indicates a first beverage
type.  Pushing a second button, instead, places the indicator device in a second state which
indicates a second beverage type.
       Additionally, there is provided a timer circuit including a capacitor 99 which determines
the length of time that the beverage will be dispensed from a selected bottle (see col. 9, lines 22-
25).  The light 85 becomes unlit when dispensing has concluded (see col. 4, lines 58-70).  Thus,
the timed discharge of the capacitor will, in effect, cause the light 85 to become unlit.
       Therefore, in Coja there is an indicator device that may be placed in a first or second state
to respectively indicate a first or second type of beverage, and there is a timer circuit that
automatically will place the device in a third state in which there is no indication being made of
the first or the second type of beverage.
       Thus Claim 1 is anticipated by Coja.

       Regarding claim 4, which is dependent on claim 1 and (1) calls for the first visual
indication to be a designation of the first type of beverage and to be comprised of at least one
alphanumeric character and (2)  additionally calls for the second visual indication to be a
designation of the second type of beverage and to be comprised of at least one alphanumeric
character, such does not distinguish over Coja.  More specifically, Coja discloses that pushing a
button marked "gin" will cause the light 85 in head 13 over the gin bottle to illuminate (col. 4,
lines 58-71).
       Thus claim 4 is anticipated by Coja.

       Regarding claim 5 which is dependent on claim 1 and calls for the beverage receptacle to
be a coffee pot, such a limitation does not distinguish over Coja.  While the liquid dispenser of
Erne is not disclosed as a coffee maker, the container 19 which receives the drink (see Fig. 1;
col. 4, lines 3-5) may be considered to define a "pot" which is capable of holding any beverage,
including coffee even though coffee is not disclosed.  Thus, inasmuch as claim 5 is not
structurally reciting coffee and the container 19 may be considered to be a pot, the limitation in
claim 5 is met by the containers 19 of Coja.

       Regarding claim 14, which is to a method, the reference of Coja discloses a step of fixing
an indicator and a timer circuit on a beverage apparatus.  More specifically, buttons 7 are panels
provided on the apparatus (see col. 4, lines 42-45).  Also, each light 85, which is in a head 13, is

Application/Control Number: 95/001,044                                        Page 12
Art Unit: 3993

carried by a plate that slides on the front panel 3 of the apparatus (see Fig. 4; col. 7, line 68 - col. 8, line 5). Further, each capacitor 99 is mounted on the back of a plate 91 of the apparatus.

For the reasons pointed out above regarding claim 1, the indicator device of Coja, i.e., the buttons 7 operatively associated with lights 85, can be placed in a first state by an operator pushing one of the buttons 7 and lighting a particular bottle of beverage, which indicates a first beverage type to be dispensed, and can be alternatively placed in a second/different state by the operator pushing another of the buttons 7 and lighting another bottle which indicates a second/different beverage type to be dispensed.

Additionally, the timer circuit, including the capacitor 99, will determine the length of dispensing time of the beverage from the selected bottle (see col. 9, lines 22-25). The light 85 will become unlit when dispensing has concluded (see col. 4, lines 58-70). Thus, the timed discharge of the capacitor will, in effect, cause the light 85 to become unlit and therefore the indicator device to be placed in a third state in which no beverage type is indicated.

Regarding the recitations that refer to a coffee receptacle and coffee machine, claim 14 does not recite coffee in the claim. The selected beverages of Coja become ultimately transferred from a bottle 9 to a container 19 (see col. 3, lines 54-60; col. 4, lines 3-5; Fig. 1). Inasmuch as the container and bottles disclosed by Coja are capable of containing coffee, as opposed to liquor or a mixed drink, they meets what is claimed in claim 14 regarding a coffee receptacle and a coffee machine.

Accordingly, claim 14 is anticipated by Coja.

Regarding claim 16, which is dependent on claim 14 and (1) calls for the first visual indication to be a designation of the first type of beverage and to be comprised of at least one alphanumeric character and (2) additionally calls for the second visual indication to be a designation of the second type of beverage and to be comprised of at least one alphanumeric character, such does not distinguish over Coja. More specifically, Coja discloses that pushing a button marked "gin" will cause the light 85 in head 13 of the gin bottle to illuminate (col. 4, lines 58-71). Part of the indicator device may be considered to include the button in addition to the light 85.

Thus claim 16 is anticipated by Coja.

The rejection of claims 1, 4 and 16 on Coja is being adopted substantially for the reasons as proposed in sections A-D pages 63-66 of the Request and in Claim Chart DD. Claims 5 and 14, which are also rejected on Coja, were not proposed but are added by the Examiner.

Claim 1, 4, 5, 14 and 16:

(A) Proposed Rejection- Not Adopted:

Application/Control Number: 95/001,044                                    Page 13
Art Unit: 3993

Claims 1, 4, 5, 14 and 16 have been proposed to be rejected under 35 U.S.C. 103 as being unpatentable over Coja in view of various combinations of Martin, Erne, Swan, the Koncelik '300 publication, Anderson, Hoffman, the ES Manual, the AP Manual, the PRX Manual, the DSP Manual, and Lucas.

This proposed rejection, which essentially was presented in the Request in sections E-I on pages 66-80 and in Claim Chart DD, is not adopted.

Coja anticipates claims 1, 4, 5, 14 and 16 for the reasons given above and thus discloses all that is claimed. Inasmuch as 35 U.S.C. § 103 requires that there be "differences between the subject matter sought to be patented and the prior art", there is no basis for rejecting under 35 U.S.C. § 103 when the Coja, which defines the prior art, meets all that is claimed.


Claim 1, 4, 5, 14 and 16:

(A) Proposed Rejection - Not Adopted:

Claims 1, 4, 5, 14 and 16 have been proposed by requester to be rejected under 35 U.S.C. 102(b) as being anticipated by Swan.

The proposed rejection, which was presented in the Request in sections A-E on pages 80-83 and in Claim Chart EE, is not adopted.

Swan discloses an apparatus in the form of a vending machine which prepares and dispenses coffee or hot water (for tea). The apparatus may be considered to include an indicator device associated with its housing which includes buttons 24 and 26 for selecting coffee or hot water (see col. 3, lines 45-48). The pressing in of a button will technically constitute an indication of that selection while the button is being pressed. The selection of either beverage will cause a time delay relay 104/106 to close and a timed switch 116 to rotate through the stages of the preparation cycle for that beverage. From the coffee selection, the coffee beans will be ground, the filter will be advanced, the water will be heated and sprayed upon the ground coffee, and the brewed coffee will ultimately drip into a cup. After that, the relay will open and the apparatus will be reset (see col. 3, line 45 - col. 4, line 8). The hot water selection includes heating and delivering water (see col. 4, lines 10-29).

However, there is no disclosure in Swan that the time delay relay 104 or 106 or the rotating, timed switch 116 will automatically change the indicator device (the pressed button) to no longer indicate whether coffee or hot water has been selected. The buttons instead appear to return to their original position when they are no longer being pressed by the customer (see col. 4, lines 54-57). Therefore, any third state of the indicator device, wherein a pressed button has returned to its original non-indicating position, will not have been caused by the timer delay relay 104 or 106 or the rotating timed switch 116.


Claim 1, 4, 5, 14 and 16:

Application/Control Number: 95/001,044                                        Page 14
Art Unit: 3993

(A) Proposed Rejection - Not Adopted:

Claims 1, 4, 5, 14 and 16 have been proposed by requester to be rejected under 35 U.S.C. 103 as
being unpatentable over Swan in view of various combinations of Martin, Erne, Coja, the
Koncelik '300 publication, Anderson, Hoffman, the ES Manual, the AP Manual, the PRX
Manual, the DSP Manual, and Lucas.
        The proposed rejection, which essentially was presented in sections F-J on pages 83-100
of the Request and in Claim Chart EE, is not adopted.
        The buttons 24, 26 of Swan technically indicate the selection of a beverage, but only
while they are being manually pressed.  None of the secondary references, including Martin,
Erne, Coja, the Koncelik '300 publication, Anderson, Hoffman, the ES Manual, the AP Manual,
the PRX Manual, the DSP Manual, and Lucas, teaches how to modify a circuitry like that of
Swan, including that having time delay relays (e.g., 104 and 106) and a timed rotating switch
(e.g., 116), so that the circuitry will automatically cause pressed buttons (e.g., 24 and 26) to
return to their original position - in order to provide non-indication.
        Furthermore, placing a shut-off timer on the Swan apparatus in view of the teachings of
Hoffman, the ES Manual, the AP Manual, and the PRX Manual will not result in a shut off that
requires a selected button to automatically stop indicating while it is being pressed.


Claims 1-16:

(A) Rejection:

Claims 1-16 are rejected under 35 U.S.C. 103 as being unpatentable over the Koncelik '300
publication in view of Martin, Erne, Coja, Swan, Anderson, Hoffman, the ES Manual, the AP
Manual, and the PRX Manual.
        The Koncelik '300 publication discloses an apparatus in the form of a coffee maker.  The
apparatus of the embodiment of Figure 3 includes an indicator device 117, including a pair of
push button lights 118, 120 which are toggle switches.  Pushing in one of the push buttons lights
will cause it to light up.  Pushing an already lit push button light will cause to become unlit (see
para. [0025]).  Further, each push button light is associated with an alphanumeric designation
located on the housing which refers to the contents in the coffee pot of the coffee maker, with the
push button light 118 being under the designation "Decaf" and the push button light 120 being
under the designation "Coffee".
        In another embodiment, shown in Figure 4, the indicator device includes a push button
light 218 capable of lighting with different colors.  Pushing in the push button light a first time
causes it to illuminate with a first color representing a first beverage type (such as decaf coffee),
but pressing the button a second time causes it to illuminate with a second color representing a
second type of beverage (such as regular coffee) (see para. [0026]).
        In the embodiment of Figure 5, an indicator device 317 is provided and includes a push
button 319 and an electronic digital display 318.  Pressing the push button 319 once causes the

Application/Control Number: 95/001,044                                           Page 15
Art Unit: 3993

electronic digital display 318 to display the term "Decaf", and pressing the push button again will
cause the electronic digital display 318 to display the term "Coffee" (see para. [0029]).

    Thus, the apparatus/coffee maker of the Koncelik '300 publication includes an indicator
device that can be placed in a first state for indicating a first type of beverage in the beverage
receptacle and that can be placed in a second state for indicating a second type of beverage in the
beverage receptacle.

    Although the Koncelik '300 publication does not disclose a timer circuit in
communication with the indicator device, such a feature is known in the art.

    In Martin, the control circuit 18 may be considered to be a timer circuit because a "timer"
is *a switch or regulator that controls or activates another mechanism at fixed intervals* and the
control means 18 coordinates the *time* of de-energizing the heater 16 and indicator lamp 28 (see
Fig. 3) to occur with the end of the brewing cycle (see Fig. 3; col. 1, lines 49-53; col. 2, lines 24-
31 and 51-55). The de-energizing of the lamp 28 will indicate that the coffee has been brewed
and is considered ready for consumption. Moreover, a strong brewing cycle for an automatic
coffee maker when making the same number of cups of coffee will have a constant length of
time.

    In Erne, the timer circuit 75 and an indicator lamp 73 are in communication, such that
termination of dispensing defined by the timer circuit will occur with turning off of the lamp, and
this will indicate to the user that the glass 10 has finished filling and the drink is ready. More
specifically, the timer circuit 75 controls the amount of beverage dispensed, and when the
dispensing of beverage has concluded the light goes out. Therefore, timing circuit 75, in effect,
functions to place the indicator device in a third state in which the light goes out and no longer
indicates the type of beverage.

    In Coja, the capacitor 99 discharges after a set amount of time (see col. 9, lines 3-7). The
capacitor 99 and the light 85 are in communication (see FIGS. 6A and 6B). The light 85 in the
head becomes unlit when dispensing has concluded (see col. 4, lines 58-70). Thus, the timed
discharge of the capacitor will, in effect, cause the light 85 and the light with the button to
become unlit.

    In Swan there is provided a timed delay relay 104/106 and a rotating timer switch 116
which are in communication with a manually pressed switch 24/26 for controlling timed
preparation of a hot beverage, such as coffee or hot water for tea (see col. 3, line 45 - col. 4, line
8; col. 4, lines 8-29).

    Anderson teaches providing a watchdog timer for resetting a coffee maker, which will
reset the display 9-16 thereof (see col. 13, lines 32-37), and further teaches providing timers for
part of the preparation steps ("milk" and "grind") for making a beverage (see col. 15, lines 18-
24; col. 16, lines 6-10).

    Hoffman (see FIG. 5A; col. 11, lines 43-49), the ES Manual (see page 5)., the AP Manual
(see page 5) and the PRX Manual (see page 6) all teach providing a shut-off timer on a coffee
maker. Moreover, the ES and AP Manuals describe the automatic shut-off feature as being a
safety feature, and Hoffman and the PRX shut-off timers provide for shutting off the entire
coffee maker. Shutting off a coffee maker would be expected to cause any indicator thereof with
regard to the beverage to be shut off as well. An automatic shut-off on a coffee maker, while a
safety feature, is also a convenience feature, so that the coffee maker with an activated warming

Application/Control Number: 95/001,044                                         Page 16

Art Unit: 3993

plate is not left "on" and unattended for an extended period of time, causing coffee to evaporate away and create a rank odor.

It would have been obvious in view of each of Martin, Erne, Coja, Swan, Anderson, Hoffman, the ES Manual, the AP Manual, and/or the PRX Manual to provide a timer circuit on the coffee maker of the Koncelik '300 publication for timing the beverage dispensing and/or some or all of the beverage preparation or for timing a safe interval in which the coffee maker may remain activated before it is automatically shuts off, or resets. It would have further been obvious in view of Martin, Erne, Coja, Anderson, Hoffman, the ES Manual, the AP Manual, and/or the PRX Manual to have provided the timer circuit in electrical communication with the indicator device of beverage type on the coffee maker, in such a manner that the timer circuit automatically causes the indicator device to no longer make an indication of beverage type.

Thus claim 1 would have been obvious over the Koncelik '300 publication in view of Martin, Erne, Coja, Swan, Anderson, Hoffman, the ES Manual, the AP Manual, and the PRX Manual.

Regarding claim 2, 6 and 15 which depend from claim 1, 5 or 14 and call for the first beverage type to be caffeinated coffee and the second beverage type to be decaffeinated coffee, this does not further distinguish over the Koncelik '300 publication, which has an indicator device to indicate caffeinated or decaffeinated coffee (see Fig. 3).

Thus, claims 2, 6 and 15 would have been obvious over the Koncelik Publication in view of Martin, Erne, Coja, Swan, Anderson, Hoffman, the ES Manual, the AP Manual, and the PRX Manual.

Regarding claim 3, which depends from claim 2 and recites that the timer circuit and indicator device can be attached *or* detached from a coffee machine (examiner's emphasis), this claim may be interpreted to call for attachment and detachment as a claimed alternative. The Koncelik '300 publication discloses an indicator device, e.g., at 117, that is attached to the coffee maker apparatus (see Fig. 1). Further, inasmuch as Martin, Erne, Coja, Anderson, Hoffman, the ES Manual, the AP Manual, and/or the PRX Manual all suggest making indicator devices and timer circuits attached to a beverage apparatus for providing the functions indicated above, it would have been obvious from their teachings to have provided a timer attached to the apparatus of the Koncelik '300 publication. Such an obvious modification meets what is claimed.

Thus, claim 3 would have been obvious over the Koncelik Publication in view of Martin, Erne, Coja, Swan, Anderson, Hoffman, the ES Manual, the AP Manual and the PRX Manual.

Regarding claims 4 and 16, which are dependent from either claim 1 or claim 14 and which call for the first visual first visual indication that a designates the first type of beverage to be comprised of at least one alphanumeric character, and for the second visual indication that designates the second type of beverage to be comprised of at least one alphanumeric character, such limitations do not further distinguish over the Koncelik '300 publication. Figure 3 of the reference shows the use of alphanumeric characters.

Thus, claims 4 and 16 would have been obvious over the Koncelik Publication in view of Martin, Erne, Coja, Swan, Anderson, Hoffman, the ES Manual, the AP Manual, and the PRX

Application/Control Number: 95/001,044                                      Page 17
Art Unit: 3993

Manual.

Regarding claim 5, which is dependent from claim 1 and which calls for the beverage receptacle to be a coffee pot, this does further distinguish over Koncelik '300 publication, which shows a coffee pot in Figure 3.
    Thus, claim 5 would have been obvious over the Koncelik Publication in view of Martin, Erne, Coja, Swan, Anderson, Hoffman, the ES Manual, the AP Manual, and the PRX Manual.

    Regarding claim 7, which is dependent from claim 2 and calls for a first light under a first designation which indicates decaffeinated coffee, and calls for a second light under a second designation which indicates non-decaffeinated coffee, this does not further distinguish over Koncelik '300 publication, which shows an Indicator device 117 including pushbutton lights 118 and 120 which are under designations "Decaf" 118a and "Coffee" 120a, respectively (see para. [0025]).
    Thus, claim 7 would have been obvious over the Koncelik Publication in view of Martin, Erne, Coja, Swan, Anderson, Hoffman, the ES Manual, the AP Manual, and the PRX Manual.

Regarding claim 8, which is dependent from claim 7 and calls for the first light to be part of a first pushbutton which can be pushed in to light the first light to indicate that decaffeinated coffee has been made, and calls for the second light to be part of a second pushbutton which can be pushed in to light the second light to indicate that non-decaffeinated coffee has been made, these limitations do further distinguish over the Koncelik '300 publication, which shows the indicator device 117 as including pushbutton lights 118 and 120 which will designate whether the beverage is "Decaf" or "Coffee" (see para. [0025]). They will light up when pushed.
    Thus, claim 8 would have been obvious over the Koncelik Publication in view of Martin, Erne, Coja, Swan, Anderson, Hoffman, the ES Manual, the AP Manual, and the PRX Manual.

Regarding claim 9, which is dependent from claim 2 and calls for a first light to be able to emit either a first or a second color light; and for the first light to emit the first color light when the coffee machine has made decaffeinated coffee and the first light to emit the second color light when the coffee machine has made non-decaffeinated coffee, such does not further distinguish over the Koncelik '300 publication, which discloses (regarding Fig. 4 embodiment) an indicator device 218 comprising a single pushbutton light that can be toggled so as to either emit a green color light or a red color light to refer to the beverage made. The green color can be considered to correspond to decaffeinated coffee, and the red can be considered to correspond to regular coffee. (see para. [0027]).
    Thus, claim 9 would have been obvious over the Koncelik Publication in view of Martin, Erne, Coja, Swan, Anderson, Hoffman, the ES Manual, the AP Manual, and the PRX Manual.

Regarding claim 10, which is dependent from claim 9 and calls for the first light to be part of a first push button that can be pushed in to light the first light and which can be toggled from emitting a first color light to emitting a second color light, such does not further distinguish over the Koncelik '300 publication, which discloses that the indicator pushbutton can be toggled to emit either a green color light or a red color light (see para. [0027]).

Thus, claim 10 would have been obvious over the Koncelik Publication in view of Martin, Erne, Coja, Swan, Anderson, Hoffman, the ES Manual, the AP Manual, and the PRX Manual.

Regarding claim 11, which is dependent from claim 2 and calls for the indicator device to include an electronic digital display which displays whether the coffee which has been made by the coffee machine is non-decaffeinated or decaffeinated, such does not further distinguish over the Koncelik '300 publication, which discloses an electronic digital display 318 that can be set to "Decaf" 318a or "Coffee" by the pressing pushbutton 319 a selected number of times (see para. [0029]).

Thus, claim 11 would have been obvious over the Koncelik Publication in view of Martin, Erne, Coja, Swan, Anderson , Hoffman, the ES Manual, the AP Manual, and the PRX Manual.

Regarding claim 12, which is dependent from claim 11 and calls for the indicator device to include a first push button which when pushed causes the electronic digital display to toggle from displaying an indication that the coffee is decaffeinated to displaying an indication that the coffee is non-decaffeinated, such does not further distinguish over the Koncelik '300 publication, which discloses that the electronic digital display 318 can be set to "Decaf" 318a or "Coffee" by pressing pushbutton 319 a selected number of times (see para. [0029]).

Thus, claim 12 would have been obvious over the Koncelik Publication in view of Martin, Erne, Coja, Swan, Anderson, Hoffman, the ES Manual, the AP Manual, and the PRX Manual.

Regarding claim 13, which is dependent from claim 2 and calls for coffee machine to have a spigot through which coffee can flow and for the coffee machine to include a spigot switch for allowing coffee to flow from the coffee machine through the spigot, such does not further distinguish over the Koncelik '300 publication, which discloses that the coffee machine 700 includes a spigot 716 and a spigot switch 714, where the spigot switch 714 allows coffee to flow through the spigot 716 and out of the coffee machine 700 (see para. [0036]).

Thus, claim 13 would have been obvious over the Koncelik Publication in view of Martin, Erne, Coja, Swan, Anderson, Hoffman, the ES Manual, the AP Manual, and the PRX Manual.

Regarding claim 14, which is to a method, the explanation above with respect to claim 1 applies. Additionally, regarding the step of fixing a timer circuit and an indicator device to a coffee machine, such a step does not substantively distinguish over the applied teachings of Martin, Erne, Coja, Anderson, Hoffman, the ES Manual, the AP Manual and the PRX Manual applied in the combination regarding indicator devices and timer circuits. For example, each of Erne and Coja has a timer (Timer Circuit 75 - Erne; Capacitor 99 - Coja) which determines the length of dispensing time and has an indicator device (lamp 73 - Erne, light 85 - Coja) for indicating the beverage dispensed, which goes out when the dispensing is finished.

Application/Control Number: 95/001,044                                    Page 19
Art Unit: 3993

     Thus, claim 14 would have been obvious over the Koncelik Publication in view of
Martin, Erne, Coja, Swan, Anderson, Hoffman, the ES Manual, the AP Manual, and the PRX
Manual.

This rejection of claims 1-16 constitutes a compilation of proposed prior art
rejections presented in sections A-I on pages 100-110 of the Request and in the
Claim Chart FF and combines prior art references of those proposed rejections
which essentially teach the same elements. The rejection of the claims is otherwise
substantially <u>adopted</u> for the reasons as proposed in the Request, set forth on pages
100-110 of the Request.

<u>Claims 1, 4, 5, 14 and 16:</u>

(A) Rejection:

Claims 1, 4, 5, 14 and 16 are rejected under 35 U.S.C. 102(b) as being anticipated by Anderson.
     Anderson discloses an apparatus in the form of an espresso coffee making machine. The
apparatus includes a timer circuit provided by timers used in the "milk" and "grind" stage
processes (see col. 15, lines 18-24; col. 16, lines 6-10), and includes an additional timer circuit
provided as a watchdog timer that will reset the entire machine (see col. 13, lines 32-37).
     The Anderson apparatus includes and indicator device which may be placed in a first or
second state by an operator. More specifically, when a user presses an input key 9-3 to 9-8
corresponding to the type of beverage desired (col. 11, lines 38-41; FIG. 9), indication of the
drink selected will be shown on an LED/LCD display window 9-16 (see col. 11, lines 39-53; Fig.
9). The beverage may be of different types, and thus the indicator device may will be placed in a
first state to indicate a first type of beverage and may be placed in a second state to indicate a
second type of beverage.
     The display window 9-16, which constitutes an indicator device, may be considered to be
in communication with the "milk" and "grind" timers because the machine is automatic and
because the timers constitute a part of the overall process of preparing and dispensing espresso
coffee. When there is an end of the overall process, which occurs at the end of the "Pour" cycle,
the Block 14-10 will activate the "Select Drink" message (see col. 15, lines 1-3), and therefore
will apparently replace the previous indication of the drink in window display 9-16.
     Moreover, the indicator device 9-16 may also be considered to be in communication with
a watchdog timer block (see col. 13, lines 32-37) which will activate, perhaps if there has been
hang-up in the operation of the apparatus. Regardless of the reason for the watchdog timer
activation, the watchdog timer will initialize the display and LED drivers, resetting all outputs.
This means that the watchdog timer will remove from the display any indication there had been
of a selected drink.
     Accordingly, Anderson may be considered to include a timer circuit in communication
with an indicator device for automatically changing the indicator device from a first state or

Application/Control Number: 95/001,044                                      Page 20
Art Unit: 3993

second state, regarding indication of a first type of beverage or a second type of beverage, to a
third state no longer providing indication of beverage type.

     Thus claim 1 is anticipated by Anderson.

     Further regarding claims 4 and 16, which are dependent respectively on claims 1 and 14
and (1) call for the first visual indication of the first type of beverage to be comprised of at least
one alphanumeric character and (2) additionally call for the second visual indication of the
second type of beverage to be comprised of at least one alphanumeric character, such does not
distinguish over Anderson. More specifically, the display window 9-16 constitutes an
alphanumeric display (see col. 11, lines 49-53).

     Accordingly, claims 4 and 16 are anticipated by Anderson.

     Further regarding claim 5, which is dependent on claim 1 and calls for the beverage
receptacle to be a coffee pot, such does not distinguish over Anderson since the beverage cup 54
may be considered to constitute a coffee pot.

     Accordingly, claim 5 is anticipated by Anderson.

     Regarding claim 14, which is a method claim, the explanation above with respect to
claim 1 applies. Further, regarding the step of fixing the indicator and timer circuit in a coffee
machine, the Anderson device constitutes a coffee machine. A machine is a manufactured
device. Further, Figure 9 shows that the display 9-16 has been provided on the operator control
panel of the machine. Additionally, it is further asserted the watchdog timer would be unable to
reset the machine, as indicated in column 11, lines 32-37, without it also having been fixed to the
machine.

     Accordingly, claim 14 is anticipated by Anderson.

This rejection of claims 1, 4, 5, 14 and 16  was proposed in the Request in sections
A-E on pages 110-114 and in Claim Chart GG and is substantially <u>adopted</u> for the
reasons as proposed.

Claim 1, 4, 5, 14 and 16:

(A) Proposed Rejection- Not Adopted:

Claims 1, 4, 5, 14 and 16 have been proposed to be rejected under 35 U.S.C. 103 as being
unpatentable over Anderson in view of various combinations of Martin, Erne, Coja, Swan, the
Koncelik '300 publication, Hoffman, the ES Manual, the AP Manual, the PRX Manual, the DSP
Manual, and Lucas.

     This proposed rejection, which essentially was presented in the Request in sections F-J on
pages 114-125 and in Claim Chart GG is <u>not adopted</u>.

     Anderson anticipates claims 1, 4, 5, 14 and 16 for the reasons given above and thus
discloses all that is claimed. Inasmuch as 35 U.S.C. § 103 requires that there be "differences

Application/Control Number: 95/001,044                                     Page 21

Art Unit: 3993

between the subject matter sought to be patented and the prior art", there is no basis for rejecting under 35 U.S.C. § 103 when the Anderson which defines the prior art, meets all that is claimed.

Claims 1, 4, 5, 14 and 16:

(A) Rejection:

Claims 1, 4, 5, 14 and 16 are rejected under 35 U.S.C. 103 as being unpatentable over Hoffman in view of Martin, Erne, Coja, Swan, the Koncelik '300 publication, Anderson, the ES Manual, the AP Manual, and the PRX Manual, the DSP Manual, and Lucas.

  Hoffman discloses an apparatus in the form of a coffee maker (see Abstract). The apparatus includes a timer circuit that comprises an auto shutoff timer 116 communicating with an indicator device that is defined by an indicator-lights-drive 106 and the associated lights 107-111 (see Figs. 4, 5A; col. 11, lines 43-49) The lights indicate the state of the coffee maker. When the shutoff timer activates to shut off the coffee maker, all indicators will therefore go out.

  There is no disclosure in Hoffman that the coffee maker of Hoffman includes an indicator device that will indicate what type of beverage is in the coffee receptacle. However, to provide such an indicator regarding beverage type would have been obvious over the teachings of any of the references of Martin, Erne, Coja, Swan, Anderson, the Koncelik '300 publication, the ES Manual, the AP Manual, and the PRX Manual, the DSP Manual, and/or Lucas.

  Martin discloses providing an indicator light 28 on a coffee maker that will indicate whether the beverage being brewed is mild, medium or strong, and teaches that when brewing has been concluded, a control unit cause the light to go out.

  Erne and Coja both teach providing indicator lights (73, Erne; 85, Coja) associated with the pressing of pushbuttons (20-25, Erne; 7 Coja) for indicating a beverage. At the end of dispensing, determined by a timer circuit (timing circuit 75, Erne; capacitor 99, Coja), the indicator light will go out.

  Anderson teaches providing an indicator device that will indicate what type of espresso coffee has been selected and is being prepared (see col. 11, lines 39-53; Fig. 9).

  Swan basically teaches providing pushbuttons 24, 26 for selecting a beverage, such as coffee or hot water (see Figs. 1 and 5).

  The Koncelik '300 publication teaches providing an indicator device, such as device 117, for indicating whether the coffee in the receptacle of the coffee maker is a caffeinated or decaffeinated coffee (see paras. [0025], [0026], [0027], [0029]).

  The ES Manual (see page 13), the AP Manual (see page 5) and the PRX Manual (see page 5) all teach providing an indicator device regarding 1-4 cups, which if activated when brewing coffee at a volume of 8-12 cups, will indicate that the coffee will be stronger or optimally saturated.

  The DSP Manual (see pages 6 and 7) teaches providing a dial indicator that will function to indicate whether the coffee being brewed (or which has been brewed) is caffeinated or decaffeinated.

Lucas, similarly to the DSP Manual, teaches that a dial selector/indicator may be turned to an indication "Regular" for caffeinated coffee or away from the Regular indication for decaffeinated coffee (see col. 9, lines 6-40).

Accordingly it would have been obvious in view of these teachings regarding dispensing, preparing or brewing to have provided an indicator device that may be placed in selective states to indicate either a first beverage type or a second beverage type. Further, it would have been obvious in view of Martin, Erne, Coja, or Anderson to have provided the indicator on the Hoffman coffee maker so that it operatively communicates with, and is therefore affected by, the timer circuit of Hoffman to shut off coffee maker.

Thus claim 1 would have been obvious over Hoffman in view of Martin, Erne, Coja, Swan, Anderson, the Koncelik '300 publication, the ES Manual, the AP Manual, and the PRX Manual, the DSP Manual, and/or Lucas.

Further regarding claims 4 and 16, which are dependent respectively on claims 1 and 14 and (1) which call for the first visual indication to be a designation of the first type of beverage and to be comprised of at least one alphanumeric character and (2) which additionally call for the second visual indication to be a designation of the second type of beverage and to be comprised of at least one alphanumeric character, such does not patentably distinguish over the applied art combination. For example, the Koncelik '300 publication teaches that an indicator device may be light buttons next to the markings regarding caffeinated and decaffeinated coffee which when one of them is lit will indicate whether the coffee in the coffee receptacle is caffeinated or decaffeinated coffee (see Fig. 1).

Accordingly, claims 4 and 16 would have been obvious over Hoffman in view of Martin, Erne, Coja, Swan, Anderson, the Koncelik '300 publication, the ES Manual, the AP Manual, and the PRX Manual, the DSP Manual, and Lucas.

Further regarding claim 5, which is dependent on claim 1 and calls for the beverage receptacle to be a coffee pot, such does not further distinguish over Hoffman which includes a coffee pot 13.

Accordingly, claim 5 would have been obvious over Hoffman in view of Martin, Erne, Coja, Swan, Anderson, the Koncelik '300 publication, the ES Manual, the AP Manual, and the PRX Manual, the DSP Manual, and Lucas.

Regarding claim 14, which is to a method, the explanation above with respect to claim 1 applies. Additionally, inasmuch as the coffee maker is a machine, and many of the references, such as the Martin, are constructed to include the indicator (see light 28, Martin) and the timer circuit (see control unit 18, Martin) in a machine, it would have been obvious to perform the step of fixing the timer circuit and indicator device in the machine for performing their functions with respect thereto.

Thus, claim 14, would have been obvious over Hoffman in view of Martin, Erne, Coja, Swan, Anderson, the Koncelik '300 publication, the ES Manual, the AP Manual, and the PRX Manual, the DSP Manual, and Lucas.

This rejection of claims 1, 4, 5, 14 and 16 constitutes a compilation of proposed
prior art rejections presented in sections A-E on pages 125-140 of the Request and
in Claim Chart HH and combines prior art references of those proposed rejections
which essentially teach the same thing. The rejection of the claims is otherwise
substantially underlined adopted for the reasons as proposed in the Request, set forth on pages
125-140 of the Request.

Claims 1, 4, 5, 14 and 16:

(A) Proposed Rejection - Not Adopted:

Claims 1, 4, 5, 14 and 16 have been proposed to be rejected under 35 U.S.C. 102(b) as being
anticipated by the ES Manual.
        The proposed rejection, which was presented in the Request in sections A-E on pages
140-143 and in the Claim Chart II, is not adopted.
        The ES Manual discloses a 1-4 Cup indicator, which when selectively lit during brewing
will indicate a longer brewed coffee and therefore that a stronger coffee is being brewed (see
pages 5, 13). If the coffee is being brewed and the 1-4 Cup indicator is not lit, the brewing time
will be less and the coffee will not be as strong. Thus, the indicator device of the ES Manual will
alternatively be placed into first and second states to indicate different beverage types, including
stronger and weaker coffee. Additionally, the coffee maker of the ES Manual includes an
automatic shut-off timer that is described as (being for) keeping the coffee warm but shutting off
after 2 hours (see page 5).
        The ES manual fails to describe the 1-4 Cup indicator as remaining lit after the brewing
cycle. Such is not inherent because the indicator primarily refers to the brewing time, and after
the end of the brewing cycle there is no need to control the length of the cycle. Thus, it is not
apparent that the 1-4 Cup indicator remains lit until the Shut-Off timer dictates that the coffee
warmer is to be shut off. Accordingly, there is no indication that shutting off the warming of the
coffee, which occurs two hours after the brewing will automatically change the 1-4 Cup indicator
to cause it automatically to turn off. Additionally, the ES Manual fails to disclose that the Shut-
Off timer shuts off the coffee maker and its indicators when timer shuts off the warmer.

Claims 1, 4, 5, 14 and 16:

(A) Rejection:

Application/Control Number: 95/001,044                                    Page 24
Art Unit: 3993

Claims 1, 4, 5, 14 and 16 have been proposed to be rejected under 35 U.S.C. 103 as being
unpatentable over the ES Manual in view Martin.

The ES Manual discloses an 1-4 CUP indicator, which when selectively lit during
brewing will indicate a longer brewed coffee and therefore a stronger coffee is being brewed (see
pages 5 and 13). If the coffee is being brewed and the 1-4 CUP indicator is not lit, the brewing
time will be less and the coffee will not be as strong. Thus, the indicator device of the ES
Manual will alternatively be placed into first and second states to indicate different beverage
types, including stronger and weaker coffee. Additionally, the coffee maker of the ES Manual
includes an Auto Shut-Off timer that is described as keeping the coffee warm but shutting off
after 2 hours (see page 5).

Although the 1-4 CUP indicator of the ES Manual is not disclosed as extending past the
brewing cycle, such that there is no indication that the Shut-Off timer of ES Manual shuts off the
indicator, the reference of Martin suggests, at Control Unit 18, that the illumination of an
indicator, such as a light 28, for indicating the strength of brewing, such as with regard to strong,
medium or mild coffee, may be timed by a Control Unit/timer circuit to go out when the brewing
is finished. This indicates to the operator of the coffee maker that the coffee is ready.
Additionally, Martin teaches providing lit indications for each of the coffee brewing strengths, so
that any one of them may be lit to actively remind the operator which strength is being brewed.

Accordingly, it would have been obvious in view of Martin to have made the indicator
device on the ES Manual coffee maker so that the 1-4 CUP indication is a lit indication and the
alternatively selected non-1-4 CUP indication is a different lit indication, and it would further
have been obvious to have made the coffee maker with a control unit/timer circuit on the coffee
maker that causes the indicator light to go out at the end of brewing. Motivation for this change
is to provide a signal to the operator/user that the coffee is ready, regardless of whether the
coffee being brewed is weak or strong.

Regarding claims 4 and 16, which are dependent on claims 1 and 16 respectively and (1)
which call for the first visual indication to be a designation of the first type of beverage and to be
comprised of at least one alphanumeric character and (2) which additionally call for the second
visual indication to be a designation of the second type of beverage and to be comprised of at
least one alphanumeric character, such does not distinguish over the ES Manual combination
with Martin. More specifically, the ES Manual shows the indicator panel (3) (see page 6) as
having indicia next to the lights for labeling what they are for. Further, the user is described as
pressing the SELECT button, in order to illuminate the 1-4 Cup indicator light, manually placing
the indicator device in the condition to indicate strong brewing strength.

Regarding claim 5, which depends from claim 1 and calls for the coffee receptacle to be a
coffee pot, this does not distinguish over the decanter 9 of the ES Manual, which defines a coffee
pot (see page 6).

Regarding claim 14, which is to a method, and includes a step calling for the timer circuit
and the indicator device to be fixed on the coffee machine, this does not distinguish over the
coffee maker of the combination of the ES Manual with Martin. The timer circuit for
deactivating the light of the indicator, above, is one that would be fixed to the coffeemaker

Application/Control Number: 95/001,044                                    Page 25
Art Unit: 3993

because it is part of the controls of the coffee maker (see Martin's Fig. 3). Additionally, the
Figure of the coffee maker on page 6 of the ES Manual shows that the indicator device has been
fixed on the front bottom of the coffee maker.

This rejection was not proposed in the Request.


Claims 1, 4, 5, 14 and 16:

(A) Proposed Rejection - Not Adopted:

Claims 1, 4, 5, 14 and 16 have been proposed to be rejected under 35 U.S.C. 103 as being
unpatentable over the ES Manual in view of various combinations of Martin, Martin, Erne, Coja,
Swan, the Koncelik '300 publication, Anderson, Hoffman, the AP Manual, the PRX Manual, the
DSP Manual, and Lucas.
        This proposed rejection, which essentially was presented in the Request in sections F-J on
pages 143-154 and in Claim Chart II, is not adopted.
        Martin has been applied above regarding a modification of the ES Manual.
        What is missing in the ES Manual is not suggested in each of the references of Erne,
Coja, Swan, the Koncelik '300 publication, Anderson, Hoffman, the AP Manual, the PRX
Manual, the DSP Manual, and Lucas. That is, none of these teachings reasonably suggests a
complement to the 1-4 CUP indicator of the ES Manual, by providing a timer circuit that will
terminate either one of two alternative states of the indicator that indicate alternative beverage
types.
        The examiner notes that while the particular teachings of Hoffman (see col. 11, linens 43-
49) and the PRX Manual (see page 6) teach providing a shut-off timer that will shut off the entire
coffee maker, they still do not teach extending a brewing indication past the brewing operation,
so that a shut-off timer of a type like Hoffman and the PRX Manual will function to shut off the
indicator.


Claims 1, 4, 5, 14 and 16:

(A) Rejection:

Claims 1, 4, 5, 14 and 16 are rejected under 35 U.S.C. 103 as being unpatentable over the AP
Manual in view of in view of Martin.
        In the AP Manual an apparatus in the form of a coffee maker is described. Coffee is
brewed by the coffee maker and dispensed in a coffee receptacle/decanter 6 (see page 6).
        The AP Manual discloses a 1-4 CUP indicator, which when selectively lit during brewing
will indicate an adjustment to the brewing time and the strength of coffee brewed thereby. More
specifically, when brewing 8-12 cups of coffee, the MODE button may be pressed twice to set

Application/Control Number: 95/001,044                                    Page 26
Art Unit: 3993

the coffee maker to a mode in which the "1-4 Cup" icon will appear on the LCD screen (see page 12). Such a mode is used for brewing 1-4 cups of quality coffee, or if activated while 8-12 cups are to be brewed, the mode will instead allow the user to adjust the coffee strength (see page 5). Where there is to be no adjustment of coffee strength, the user may instead merely press the BREW button (see page 10). Thus, the 1-4 Cup mode indicated by the appearance of the lit icon while brewing 8-12 cups will define the indicator device as having been placed in a first state for indicating adjusted strength of the coffee, whereas the non-1-4 Cup mode indicated by the lack of the lit icon on the LCD screen while brewing 8-12 cups of coffee will define a second state of the indicator device in which the strength of the coffee has not been adjusted. However, the indication lasts only until the brewing is completed (see page 12), and not to two hours later when the Auto Shut Off turns off the coffee warming element (see page 5).

Thus, indication by the 1-4 Cup indicator of the AP Manual does not extend past the brewing cycle, to be turned off by the Auto Shut Off.

However, the reference of Martin suggests at Control Unit 18 that the illumination of an indicator, such as a light 28, for indicating the strength of brewing, such as with regard to strong, medium or mild coffee, may be timed by a Control Unit/timer circuit to go out when the brewing is finished. This indicates to the operator of the coffee maker that the coffee is ready. Additionally, Martin teaches providing lit indications for each of the coffee brewing strengths, so that any one of them may be lit to actively remind the operator of which strength is being brewed.

Accordingly, it would have been obvious in view of Martin to have made the indicator device on the AP Manual coffee maker so that the 1-4 Cup indication is a lit indication and the alternatively selected non-1-4 Cup indication is a different lit indication, and it would further have been obvious to have made the coffee maker with a control unit/timer circuit on the coffee maker that causes the indicator light to go out at the end of brewing. Motivation for this change is to provide an indication to the operator that the coffee is ready, whether the coffee was brewed weak or strong.

Accordingly, claim 1 would have been obvious over the AP Manual in view of Martin.

Further regarding claims 4 and 16, which (1) call for the first visual indication to be a designation of the first type of beverage and to be comprised of at least one alphanumeric character and (2) additionally call for the second visual indication to be a designation of the second type of beverage and to be comprised of at least one alphanumeric character, such does not distinguish over the art combination. Martin teaches that alphanumeric indicia (see element 32) may be provided with the positions of an indicator 28 for indicating the beverage types associated with those positions. Thus, it would have further been obvious to provide alphanumeric indicia for each of the states of the indicator of the AP Manual, as modified by Martin.

Thus, claims 4 and 16 would have been obvious over the AP Manual in view of Martin.

Regarding claim 5, which calls for the beverage receptacle to be a coffee pot, such does not further distinguish over the AP Manual, because the decanter 6 of the AP Manual (see page 6) defines a coffee pot.

Thus claim 5 would have been obvious over the AP Manual in view of Martin.

Application/Control Number: 95/001,044                                              Page 27
Art Unit: 3993

      Regarding claim 14, which is to a method having a step recited of fixing the timed circuit and indicator to the coffee machine, such does not further distinguish over the combination of the AP Manual and Martin.  For example, Martin teaches making both an indicator (28) and a control unit timer circuit (18) integrated/fixed into a coffee machine

      Thus, claim 14 would have been obvious over the AP Manual in view of Martin.

# This rejection was not proposed in the Request.

Claims 1, 4, 5, 14 and 16:

(A) Rejection - Not Adopted:

Claims 1, 4, 5, 14 and 16 have been proposed to be rejected under 35 U.S.C. 103 as being unpatentable over the AP Manual in view of various combinations of Martin, Erne, Coja, Swan, the Koncelik '300 publication, Anderson, Hoffman, the ES Manual, the PRX Manual, the DSP Manual, and/or Lucas.

      This proposed rejection, which essentially was presented in the Request in sections A-E on pages 154-161 and in Claim Chart JJ, is not adopted.

      Martin has been applied above regarding a modification to the subject matter of the AP Manual.

      What is missing in the AP Manual is not suggested in each of the references of Erne, Coja, Swan, the Koncelik '300 publication, Anderson, Hoffman, the ES Manual, the PRX Manual, the DSP Manual, and Lucas.  That is, none of these teachings reasonably suggests a complement to the 1-4 Cup indicator of the AP Manual, by providing a timer circuit that will terminate either one of two alternative states of the indicator which indicate alternative beverage types.

      The examiner notes that while the particular teachings of Hoffman and the PRX Manual teach providing a shut-off timer that will shut off the entire coffee maker, they do not teach extending a brewing indication past the brewing operation, so that a shut-off timer of a type like Hoffman and the PRX Manual will function to shut off the indicator.

Claims 1, 4, 5, 14 and 16:

(A) Rejection:

Claims 1, 4, 5, 14 and 16 are rejected under 35 U.S.C. 103 as being unpatentable over the PRX Manual in view of in view of Martin.

      In the PRX Manual an apparatus in the form of a coffee maker is described.  Coffee is brewed by the coffee maker and dispensed in a coffee receptacle/decanter (see page 4).

Application/Control Number: 95/001,044                                    Page 28
Art Unit: 3993

The coffee maker includes an indicator device which may be placed in a first state for indicating a first beverage type in the coffee receptacle and alternatively which may be placed in a second state for indicating a second beverage type in the coffee receptacle. More specifically, there is a 1-4 CUP indicator light on the coffee maker for extending the brewing time by about 30% for ensuring optimal saturation, i.e., added strength, of the coffee (see page 5). Although considered useful for brewing 1-4 cups, the 1-4 Cup mode would appear to be capable of being actuated for any number of cups of coffee or for being not activated even if only 1-4 cups are to be brewed. Accordingly, the indicator light indicating whether the 1-4 Cup mode has been activated will selectively indicate non-activation and therefore a weaker coffee when it is off, and activation and therefore a stronger coffee when it is on. Holding down the SELECT button until both the AUTO START light and the 1-4 CUP light become lit will activate the 1-4 Cup mode (see page 5). Pressing the SELECT button merely until the ON light illuminates, however, will start the normal brewing (see page 6).

The ON light will remain on after brewing has finished to indicate that the warming plate is still hot. However, there is no indication whether the 1-4 Cup mode will remain on after brewing.

In addition to the indicator device, the coffee maker of the PRX Manual includes a Shut-Off timer that shuts off the coffee maker after four hours (see page 6). Shutting off the coffee maker will cause the ON indicator light to be turned off. Inasmuch as there is no description that the 1-4 CUP light stays lit past the brewing cycle, the ON indicator past the brewing stage will likely only indicate whether the coffee maker is on. Therefore, there is insufficient disclosure to indicate that the Automatic SHUT OFF on the coffee maker will be capable of turning off the 1-4 CUP indication and thus be permitted to turn off an indication of the brewing strength, whether weaker or stronger.

However, the reference of Martin suggests at Control Unit 18 that the illumination of an indicator, such as a light 28, for indicating the strength of brewing, such as with regard to strong, medium or mild coffee, may be timed by a Control Unit/timer circuit to go out when the brewing is finished. This gives indication to the operator of the coffee maker that the coffee is ready. Additionally, Martin teaches providing lit indications for each of the coffee brewing strengths, so that any one of them may be lit to actively remind the operator of which strength is being brewed, and be turned off to indicate brewing is finished.

Accordingly, it would have been obvious in view of Martin to have made the indicator device on the PRX Manual coffee maker so that the 1-4 CUP indication is a lit indication for indicating a strength of brew and the alternatively selected non-1-4 CUP indication is a different lit indication, and it would further have been obvious to have made the coffee maker with a control unit/timer circuit on the coffee maker that causes whichever indicator light to go out at the end of brewing. Motivation for this change is to provide an indication to the operator that the coffee is ready, regardless of whether the coffee was brewed weak or brewed stronger.

Accordingly, claim 1 would have been obvious over the PRX Manual in view of Martin.

Further regarding claims 4 and 16, (1) call for the first visual indication to be a designation of the first type of beverage and to be comprised of at least one alphanumeric character and (2) additionally call for the second visual indication to be a designation of the second type of beverage and to be comprised of at least one alphanumeric character, such does

Application/Control Number: 95/001,044                                                Page 29
Art Unit: 3993

not distinguish over the art combination. Martin teaches that alphanumeric indicia (see element 32) may be provided at the positions/states of an indicator (28) for indicating the beverage types associated with those positions. Further, the PRX Manual shows that the alphanumeric indicia may be provided associated with indicating lights (see Figure, page 5). Thus, it would have further been obvious to provide alphanumeric indicia for each of the states of the indicator of the PRX Manual, as modified by Martin, for readily determining what they represent.

Thus, claims 4 and 16 would have been obvious over the AP Manual in view of Martin.

Regarding claim 5, which calls for the beverage receptacle to be a coffee pot, such does not further distinguish over the PRX Manual, because the decanter of the PRX Manual (see page 4) defines a coffee pot.

Thus claim 5 would have been obvious over the PRX Manual in view of Martin.

Regarding claim 14, which is to a method having a step recited of fixing the timed circuit and indicator to the coffee machine, such does not further distinguish over the combination of the PRX Manual and Martin. For example, Martin teaches making both an indicator (28) and a control unit timer circuit (18) in a manner in which they are integrated/fixed into a coffee machine

Thus, claim 14 would have been obvious over the PRX Manual in view of Martin.

This rejection was not proposed in the Request.

Claims 1, 4, 5, 14 and 16:

(A) Rejection - Not Adopted:

Claims 1, 4, 5, 14 and 16 have been proposed to be rejected under 35 U.S.C. 103 as being unpatentable over the PRX Manual in view of various combinations of Martin, Erne, Coja, Swan, the Koncelik '300 publication, Anderson, Hoffman, the ES Manual, the AP Manual, the DSP Manual, and/or Lucas.

This proposed rejection, which essentially was presented in the Request in sections A-E on pages 161-175 and in the Claim Chart KK, is not adopted.

The PRX Manual describes an indicator device having a first state (lit), indicating 1-4 cups, that signifies a first beverage type (stronger coffee) and having a second state (unlit) that signifies a second beverage type (weaker coffee). Martin has been applied above regarding a modification to the subject matter of the PRX Manual for turning off a brewing strength indicator device at the completion of brewing stronger or weaker coffee.

However, what is missing in the PRX Manual, per se, is not suggested in each of the references of Erne, Coja, Swan, the Koncelik '300 publication, Anderson, Hoffman, the ES Manual, the AP Manual, the DSP Manual, and Lucas. That is, none of these teachings reasonably suggests a complement to the 1-4 CUP indicator of the PRX Manual, which will result in a timer circuit that terminates either one of the two alternative states of said indicator.

Application/Control Number: 95/001,044                                    Page 30
Art Unit: 3993

Claims 1, 2, 4-6 and 14-16:

(A) Proposed Rejection - Not Adopted:

Claims 1, 2, 4-6 and 14-16 have been proposed to be rejected under 35 U.S.C. 103 as being
unpatentable over the DSP Manual in view of various combinations of Martin, Erne, Coja, Swan,
the Koncelik '300 publication, Anderson, Hoffman, the ES Manual, the AP Manual, the PRX
Manual, and Lucas.
       The proposed rejection, which essentially was presented in the Request in sections A-I on
pages 175-182 and in Claim Chart LL, is not adopted.
       In the DSP Manual there is disclosed an apparatus in the form of a coffee maker. The
coffee maker includes a dial indicator which is turned between the indications, "regular" and
"decaffeinated" (see pages 6 and 7). The "regular" indication obviously refers to caffeinated
coffee. The dial determines the length of the brewing cycle, based upon the type of coffee
selected by the dial; decaffeinated needs a longer brewing cycle. Accordingly, the DSP Manual
discloses an indicator device that may be selectively placed in a first state for indicating a first
beverage type (caffeinated) or placed in a second state for indicating a second beverage type
(decaffeinated). However, the DSP Manual does not disclose a timer circuit which will
automatically change the indicator device dial from the first or second state to a third state in
which no indication is given as to beverage type.
       Moreover none of the timer circuits disclosed in Martin, Erne, Coja, Swan, Anderson,
Hoffman, the ES Manual, the AP Manual, and the PRX Manual includes the capability to
automatically change a dial type indicator device to cause it to no longer provide indication.
Further, while each of the timers of Martin, Erne, Coja, Swan and Anderson will set the *time* of
the dispensing and/or the partial or complete preparation of a beverage, there is no teaching in
any of these references to use a timer circuit with respect to making caffeinated or decaffeinated
coffee. Additionally, while each of Hoffman, the ES Manual, the AP Manual, and the PRX
Manual discloses timer circuits regarding an automatic shut-off of the warmer or the entire
coffee maker, there is no relationship between a shut-off and any indicated selection for making
caffeinated or decaffeinated coffee.
       Lucas adds nothing to providing a timer circuit in the coffee apparatus.

Claims 1, 2, 4-6 and 14-16:

(A) Proposed Rejection - Not Adopted:

Claims 1, 2, 4-6 and 14-16 have been proposed to be rejected under 35 U.S.C. 103 as being
unpatentable over the Lucas in view of various combinations of Martin, Erne, Coja, Swan, the

Case 1:08-cv-00623    Document 32-6    Filed 08/14/2008    Page 33 of 34

Application/Control Number: 95/001,044                                    Page 31
Art Unit: 3993

Koncelik '300 publication, Anderson, Hoffman, the ES Manual, the AP Manual, the PRX
Manual, and/or Lucas.

The proposed rejection, which essentially was presented in the Request in sections A-F
on pages 182-193 and in Claim Chart MM, is not adopted.

In Lucas there is disclosed an apparatus in the form of a coffee maker. The coffee maker
includes a dial indicator which may be turned to a position pointing to the marking "Regular" or
to a position pointing away from the marking, with the setting of the dial being used to
effectively indicate a brewing speed for caffeinated coffee or decaffeinated coffee respectively
(see col. 9, lines 6-40). The dial is connected to a control valve that will determine the water
flow rate and, consequently, the length of the brewing cycle, based upon the type of coffee
selected by the dial (see col. 3, lines 7-13; col. 7, lines 18-31). Accordingly, Lucas discloses an
indicator device that may be selectively placed in a first state for indicating a first beverage type
(caffeinated) or a second state for indicating a second beverage type (decaffeinated). However,
Lucas does not disclose a timer circuit which will automatically change the indicator device dial
from the first or second state to a third state in which no indication is given as to beverage type.

Moreover none of the timer circuits disclosed in Martin, Erne, Coja, Swan, Anderson,
Hoffman, the ES Manual, the AP Manual, and the PRX Manual includes the capability to
automatically change a dial type indicator device to cause it to no longer indicate. Further, while
each of the timers of Martin, Erne, Coja, Swan and Anderson will set the *time* of the dispensing
and/or the partial or complete preparation of a beverage, there is no teaching in any of these
references to use a timer circuit with respect to making caffeinated or decaffeinated coffee.
Additionally, while each of Hoffman, the ES Manual, the AP Manual, and the PRX Manual
discloses timer circuits regarding automatic shut-off of the warmer or the entire coffee maker,
there is no relationship between a shut-off and any indicated selection for making caffeinated or
decaffeinated coffee.

The DSP Manual adds nothing to providing a timer circuit in an apparatus.

Conclusion:

In order to ensure full consideration of any amendments, affidavits or declarations, or other
documents as evidence of patentability, such documents must be submitted in response to this
Office action. Submissions after the next Office action, which is intended to be an Action
Closing Prosecution (ACP), will be governed by 37 CFR 1.116, which will be strictly enforced.

The patent owner is reminded of the continuing responsibility under 37 CFR 1.565(a) to apprise
the Office of any litigation activity, or other prior or concurrent proceeding, involving the
reexamined patent, throughout the course of this reexamination proceeding. The third party
requester is also reminded of the ability to similarly apprise the Office of any such activity or
proceeding throughout the course of this reexamination proceeding. See MPEP §§ 2207, 2282,
2286 and 2686.

Application/Control Number: 95/001,044                                    Page 32
Art Unit: 3993

**All** correspondence relating to this *inter partes* reexamination proceeding should be directed:

```
By Mail to: Attn: Mail Stop "Inter Partes Reexam"
                  Central Reexamination Unit
                  Commission for Patents
                  P.O. Box 1450
                  Alexandria, VA 22313-1450

By FAX to:  (571) 273-9900
                  Central Reexamination Unit

By hand:          Customer Service Window
                  Attn:  Central Reexamination Unit
                  Randolph Building, Lobby Window
                  401 Dulany St.
                  Alexandria, VA 22314
```

Any inquiry concerning this communication or earlier communications from the Reexamination
Legal Advisor or Examiner, or as to the status of this proceeding, should be directed to the
Central Reexamination Unit at telephone number (571) 272-7705.

Jimmy G. Foster
Primary Examiner
Central Reexamination Unit 3993

CONF: BXJ2